**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony CUSUMANO, Michael John McCarthy, Eugene Arthur Riggio, Anthony Suppa and James Testa, Defendants-Appellants.**

**Nos. 531–535, Dockets 34092, 34290–34293.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 13, 1970.

Decided June 25, 1970.
Certiorari Denied Oct. 12, 1970.
See 91 S.Ct. 61, 62.

Jill Wine Volner, Atty., Dept. of Justice, Washington, D. C. (Edward R. Neaher, U. S. Atty., for the Eastern District of New York, Robert Ornstein, Special Atty., and William Murphy,

Atty., Dept. of Justice, on the brief), for appellee.

Michael P. Direnzo, New York City, for appellant Anthony Cusumano.

Eugene F. Mastropieri, Glendale, N. Y., for appellants Michael John McCarthy and Anthony Suppa.

Gustave H. Newman, Brooklyn, N. Y. (Evseroff, Newman & Sonenshine, Brooklyn, N. Y., on the brief), for appellant Eugene A. Riggio.

James M. LaRossa, New York City, for appellant James Testa.

Before LUMBARD, Chief Judge, and FRIENDLY and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

■ Anthony Cusumano, Michael John McCarthy, Eugene Arthur Riggio, Anthony Suppa, and James Testa were convicted in the Eastern District after a jury trial before Judge Judd of theft and possession of goods stolen from an interstate shipment in violation of 18 U.S.C. § 659. Appellants challenge the sufficiency of the warnings given to them when they were placed in custody. We find that the warnings given satisfy the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and affirm the convictions.

Sometime during the night of October 24–25, 1968, a truck belonging to Miller Motor Freight was stolen from a freight depot in Brooklyn, New York. The truck, Miller Motor Freight No. 400, had been en route from Harrisburg, Pennsylvania, to Honig's Parkway Stores in the Bronx, New York, and when stolen was carrying 39 RCA Whirlpool washers, 8 RCA Whirlpool dishwashers, and 2 RCA Whirlpool driers. Early in the morning of October 25, 1968, the dispatcher of the freight yard noticed that a truck was missing and notified the police. Shortly thereafter several FBI agents, Pennington, Haridopolis, and Beech, stopped at appellant Testa's warehouse in Brooklyn. Testa had just given consent to search his premises, when Agent Pennington saw a trailer

with the number 400 on it coming out of the warehouse. Two of the agents ran to the truck and stopped it just after it had pulled out of the gate. Appellant Cusumano was driving the truck. The agents checked the back of the truck but, finding it empty, they walked toward the rear of the premises in the direction from which the truck had come. At this point, four men, appellants McCarthy, Riggio, and Suppa, as well as Gerald Seniscalchi, who was acquitted at trial, were seen emerging from the back of the warehouse. After asking their names, the agents proceeded into the area from which the men had come and discovered a cache of boxes containing Whirlpool products. The agents made a further search and then arrested all the appellants.

At a suppression hearing held on April 30 and May 1, 1969, before Judge Judd, Agents Pennington and Haridopolis testified, largely about the search of the premises. At the trial both agents again testified regarding the search and the warnings given before the appellants made any statements. Appellants challenge the adequacy of the warnings given to them on a variety of grounds. McCarthy, Suppa, and Riggio were in a group coming from the back portion of Testa's premises and each was given the same warning by Agent Haridopolis. Agent Haridopolis testified on voir dire that

"I said to them that they didn't have to make any statement, that any statement they did make could be used against them in a court of law. They are entitled to an attorney to be present while they make any statements and if they could not afford an attorney, the court would appoint one."

The adequacy of the warnings to these three appellants follows *a fortiori* from United States v. Lamia, 2 Cir., 429 F.2d 373, decided today.

The warnings given to Testa and Cusumano, which Agent Pennington testified were given by Agent Beech, vary from those given to the other ap-

pellants, but still satisfy the *Miranda* standards. At trial Pennington testified that Agent Beech advised Cusumano

> "of his rights, the right to remain silent, right to counsel, that anything he said could be used against him in a court of law, and that he didn't have to answer any questions at all."

Earlier, at the suppression hearing, Agent Pennington testified that the warning to Cusumano was phrased as follows:

> "I advised Mr. Cusumano of his rights to remain silent, of his right to an attorney, the fact that any statement he made could be used in the court of law, that he had the right to legal counsel and if he didn't have counsel, it would be appointed [sic] for him * * *."

Agent Pennington testified at trial that Testa was advised

> "of his rights, the right to remain silent, the right to counsel, the right to have an attorney appointed for him if he couldn't afford an attorney, and anything he said could be used against him in a court of law."

Neither Cusumano nor Testa was specifically told that he had the right to have an attorney present during actual questioning, yet such an inference can readily be drawn from the circumstances of the warning. As in *Lamia*, appellants were told without qualification that they had a right to an attorney. Furthermore, Testa and Cusumano, unlike Lamia, were told explicitly that they had a right to remain silent, *not to say anything*. It is unrealistic to expect the same degree of formality with respect to waiver in questioning "on the street" as in the stationhouse. We agree with the trial judge who found the statement was voluntarily given and in light of the surrounding circumstances that the appellants knowingly and intelligently waived their rights.

A similar warning was upheld in Sweeney v. United States, 408 F.2d 121 (9th Cir. 1969), where the defendant was advised

> "that he did not have to answer any questions; of his right to remain silent; that any statements made by him could be used against him in a court of law; that he was entitled to an attorney; that if he could not afford an attorney one would be appointed for him; and that he was entitled to use the telephone." 408 F. 2d at 124.

Although the court attached importance to the added advice that defendant could use the telephone, it stated:

> "The reference to the right to counsel, following, as it did, immediately on the warning as to the right to remain silent and the risk in not doing so, would, we think, be taken by most persons to refer to the contemplated interrogation, not to some other time, particularly where, as here, appellant was told that he could use the telephone." 408 F.2d at 124.

In view of our conclusion that the warnings satisfied the requirements of *Miranda*, we find it unnecessary to consider the government's claim made for the first time at the argument of this appeal that the confessions were admissible under 18 U.S.C. § 3501, 82 Stat. 218 (1968).

■ Appellant Testa objects that the warehouse was searched before he had been adequately warned of his right not to consent. We find no merit in this argument. Seé United States ex rel. Combs v. LaVallee, 417 F.2d 523 (2d Cir. 1969). Testa was an officer of Gold'N'Ripe Banana, the lessee of the warehouse where the goods were found, and was standing at the entrance when the agents approached. Although the evidence is strong that Testa gave his consent to the search, the government does not rely solely on that ground as the search was incident to a lawful arrest. Just as the agents were ending their talk with Testa they saw a truck with Number 400 on it leaving the warehouse and proceeded to stop it. At this point probable cause existed to arrest the driver, Cusumano, and the three appel-

lants who were seen coming out of the back shortly thereafter; and the judge would have been justified in finding that their freedom of movement was sufficiently restrained to constitute an arrest. See Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. Thompson, 356 F.2d 216, 223 (2 Cir. 1965). In view of Testa's consent and the arrests which followed almost immediately there can be no doubt about the propriety of the search.

■■■■■ Appellant Riggio, relying on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), argues that it was error for the trial court to deny his motion, made before trial, for a severance because of exculpatory statements given by co-defendant McCarthy which the jury must have found false. FBI agent Roselle testified that he had questioned McCarthy shortly after the robbery and McCarthy had stated that he did not know any of the other defendants. Roselle then told of a slip of paper that was found in McCarthy's pocket, containing the name G. Riggio and the telephone numbers 497–1020 and 497–0332. When Roselle questioned Riggio later that morning, Riggio told him that his phone numbers were 497–1020 and 497–0332. On cross-examination by McCarthy's counsel, Roselle testified that McCarthy had told him at the time that the name and numbers belonged to a player on a boys' basketball team of which he was coach. The trial judge emphasized to the jury that the statement was only binding on the defendant who actually made it, and that anything a defendant says that affects another defendant cannot be considered against that other defendant. We find that it was not error for the trial judge to deny a severance. The slip of paper was not hearsay, United States v. Bennett, 409 F.2d 888, 895 n. 6 (2 Cir. 1969). McCarthy's statement did not implicate Riggio, and the risk that the jury might take his lie as doing so falls within the Bruton caveat that there are many cases where the jury can and will follow

the trial judge's instruction, 391 U.S. at 135, 88 S.Ct. 1620.

■■■ Appellants further claim that when the case was submitted to the jury the government should have elected between the count for stealing goods and the count for possession of goods, both charged under 18 U.S.C. § 659. We agree with those courts which have passed upon this question, D'Argento v. United States, 353 F.2d 327 (9th Cir. 1965), cert. denied, 384 U.S. 963, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966); Robinson v. United States, 333 F. 323 (8th Cir. 1964); Carroll v. United States, 174 F. 2d 412 (6th Cir. 1949), that such an election is not required.

■■■ Only Testa testified at trial. The other appellants argue that the government made impermissible comments on their failure to take the stand. They rely on one phrase in the prosecutor's summation in which he said "You remember who testified and who did not. You remember that and you have got to ask yourself why." Taken out of context this statement would seem to be an impermissible comment on the failure of certain of the defendants to testify. In the setting in which it was made, however, we do not believe that any prejudice occurred. Throughout the trial there was dispute as to how the four defendants had come to be in the back of the warehouse. The appellants claimed that they had just come through a back door, but the government contended this was not possible as no such door existed at the time. During his summation the prosecutor focused on this issue and after a prolonged discussion that takes several pages in the transcript he stated:

> "You remember that he [Agent Haridopolis] is the only person you heard testify as to how that back room looked that morning, not Testa, not Juliano, not Sampella, not Gambino, not Lillian Stone."

Shortly after this remark, in his closing phrases on this point, the prosecutor made the statement objected to. It is clear that the reference to not testifying

referred only to the dispute regarding the existence of a back door to the warehouse and the jury could not have understood it to be more than that.

We have examined appellants' other claims and find them without merit. We affirm the judgment.