UNITED STATES of America, Appellee,

v.

Anthony CALDWELL, Appellant.

No. 90–2857.

United States Court of Appeals,
Eighth Circuit.

Submitted April 8, 1991.

Decided Jan. 16, 1992.

Rehearing Denied Feb. 18, 1992.

James E. Sullivan, St. Louis, Mo., argued, for appellant.

Edward J. Rogers, St. Louis, Mo., argued, for appellee.

Before LAY,* Chief Judge, FRIEDMAN,** Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Anthony Caldwell appeals from his conviction of conspiracy to possess cocaine base with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1988). The sole issue on appeal is whether the district court[1] erred in denying Caldwell's motion to suppress statements made to Detective Albert Upchurch because of inadequate *Miranda*[2] warnings. Caldwell argues that the failure of Detective Upchurch to tell him that he had a right to consult with an attorney before and during his interrogation invalidated the warnings provided by Upchurch. We affirm the conviction.

On January 7, 1990, Barbara Johnson opened a package delivered to the apartment of her grandmother, Gustine Sumner. The package was delivered by Federal Express and addressed to "Bob Johnson" at Sumner's address. Johnson opened the package in Sumner's apartment and saw a clear plastic bag with a white powder chunk. Johnson took the package upstairs to her apartment and called a neighbor, Vivian Jones. Jones lived in the same four-

---

\* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

\*\* The HONORABLE DANIEL M. FRIEDMAN, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

1. The Honorable George Gunn, United States District Judge for the Eastern District of Missouri.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

family flat as Sumner and Johnson. Jones came to Johnson's apartment, where Johnson showed her the package. Both women suspected that the package contained drugs. Jones called her eighteen year old son, Anthony Caldwell, over to the apartment. She showed Caldwell the package and asked whether he was expecting it. Caldwell first said he was not, and then admitted that he was expecting the package. Caldwell then left the apartment.

Jones and Johnson decided to seek advice from Mike Washington, a St. Louis police officer and a friend of Johnson's. Washington came to Johnson's apartment, looked at the package, and suspected that it contained drugs. Because Washington did not feel he had the necessary expertise to investigate a drug matter, he called the police department command post and requested that Detective Albert Upchurch come to the apartment.

While Washington was in Johnson's apartment, Caldwell called Jones at her apartment, which was on the same level as Johnson's. Jones talked to Caldwell on the telephone and tried to persuade him to return to the apartment. Washington then went to Jones's apartment and spoke with Caldwell on the telephone. Caldwell was upset and crying, and Washington told him that he should return to Johnson's apartment to straighten this matter out, and that if he did not return, he could "probably be in a lot of trouble."

Caldwell returned to Johnson's apartment. Washington spoke to Caldwell, who was "scared, very frightened, [and] extremely nervous." Caldwell's voice was lower than usual and quivering. Jones was also visibly upset and pacing around the apartment. Washington did not advise Caldwell of his *Miranda* rights. Washington asked Caldwell about the package, and Caldwell told him that a couple of weeks earlier, he had met a man named "Ray" who promised him $500 if he would accept a package at his address. Caldwell admitted that he knew that the package would contain cocaine. Washington told Caldwell that he had called Detective Upchurch from the police command post and that it would

be in his best interest to be as cooperative as possible with Upchurch.

Detective Upchurch arrived and Washington led him to the kitchen where Caldwell was seated. Upchurch looked at the package, which he believed to contain crack cocaine. Washington introduced Upchurch to Caldwell. Detective Upchurch immediately advised Caldwell of his rights to remain silent and to counsel, telling Caldwell:

You got the right to remain silent. Anything you say will and can be used against you in the court of law. You have a right for an attorney. If you can't afford one, one will be appointed to you.

Upchurch then asked Caldwell whether he understood his rights. Caldwell shook his head indicating he understood. Upchurch testified that Caldwell was "scared and hysterical looking." Jones paced in and out of the kitchen, and Upchurch testified that she was "excited" and "hysterical." Caldwell and Upchurch moved to the living room where Upchurch again asked Caldwell: "You sure you understood your rights?" Caldwell said that he did. Upchurch then asked Caldwell what happened, and Caldwell repeated the same story he told Washington—that a guy named "Ray" agreed to pay him $500 to use his address to have cocaine delivered. At that point, Upchurch placed Caldwell under arrest, and after talking with his mother and looking at Caldwell's room, took him to the narcotics office of the St. Louis Police Department. There, Upchurch again advised Caldwell of his rights and asked him if he understood his rights. Caldwell said that he did, and in answer to questions, Caldwell repeated the statements he had given before. Caldwell refused to sign a written statement.

The facts above are essentially as recited in the magistrate's report and recommendation following the suppression hearing. *United States v. Caldwell*, No. 90–12–CR(6), slip op. at 2–7 (E.D.Mo. June 13, 1990). The magistrate recommended that Caldwell's statements made in Johnson's apartment to both Washington and Upchurch be suppressed because Caldwell did

not voluntarily and intelligently waive his rights due to his upset mental state, his mother's upset condition, and his age and inexperience. *Id.* at 9–10. The magistrate also held that Caldwell's statement given at the police station should be suppressed because the circumstances of the interrogation were such that he was not shown to have intelligently waived his rights to remain silent and to counsel. *Id.* at 10.

The district court adopted the statement of facts concerning the motion to suppress the statements and the recommendation that Caldwell's statements to Washington be suppressed. *United States v. Caldwell,* No. 90–12–CR(6), slip op. at 1–2 (E.D.Mo. Aug. 2, 1990). The district court, however, rejected the magistrate's recommendation that Caldwell's statements to Upchurch be suppressed, reasoning that Upchurch advised Caldwell three times of his constitutional rights and asked him twice if he understood those rights. *Id.* at 1–2. The court ruled that the circumstances did not " 'rise to the level of compulsion or coercion to speak ... within *Miranda's* concerns.' " *Id.* at 2 (quoting *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990)).

A jury convicted Caldwell of conspiring to possess cocaine with intent to distribute. Caldwell was sentenced to a mandatory 121 month sentence, as the amount of cocaine was 197.2 grams of 85% pure crack cocaine with a wholesale value of $20,000–24,000. U.S.S.G. § 2D1.1(c)(5).

On appeal, Caldwell argues that the district court erred in failing to suppress his statements made to Upchurch because Caldwell was inadequately advised of his *Miranda* rights.[3] Caldwell specifically argues that although Upchurch told him that he had the right to an attorney, he failed to tell him when that right accrued or that he had the right to consult with an attorney before and during his interrogation. The government responds that Caldwell was

not in custody at the time he confessed to Upchurch, and therefore, no *Miranda* warnings were required.

■ As a threshold matter, we must first consider whether Caldwell was in custody for *Miranda* purposes when he confessed to Upchurch. *Miranda* warnings are required only when a suspect is in custody and is about to be interrogated. *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). A suspect is considered "in custody" for *Miranda* purposes either when he has been formally arrested and not free to leave the location, or when a reasonable person in the suspect's position would have considered his freedom of movement restrained to a degree that is usually associated with a formal arrest. *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984); *United States v. Goudreau,* 854 F.2d 1097, 1098 (8th Cir. 1988).

The magistrate concluded that Caldwell was "in custody" for *Miranda* purposes when Officer Washington first began to question him in Johnson's apartment. Slip op. at 7–8 (June 13, 1990). The district court did not decide whether Caldwell was in custody for *Miranda* purposes.[4]

■ We need not decide whether Caldwell was in custody for *Miranda* purposes when he first confessed to Upchurch. The government does not address Caldwell's statement made during his interrogation at the police station where it is uncontradicted that Caldwell was under formal arrest, and therefore, in custody for *Miranda* purposes. In light of the confusion created by the district court's ruling, we assume for purposes of this appeal that Caldwell was in custody at the time he returned to Johnson's apartment.

Before considering the merits of Caldwell's claim that he was provided with inad-

---

3. The government did not appeal from the district court ruling suppressing Caldwell's statement made to Washington.

4. The district court adopted the magistrate's recommendation that Caldwell's statements to Washington be suppressed and, thus, may have

implicitly agreed with the magistrate's conclusion that Caldwell was in custody for *Miranda* purposes when he returned to Johnson's apartment to talk to Washington. Slip op. at 1 (Aug. 2, 1990).

equate *Miranda* warnings, we must first decide whether Caldwell properly preserved the issue of the adequacy of *Miranda* warnings for appeal. At oral argument the parties brought to our attention for the first time that Caldwell did not raise his objection to the adequacy of *Miranda* warnings before the magistrate judge or district court. Caldwell's counsel initially admitted at oral argument that Caldwell's court-appointed counsel did not raise the specific issue of the adequacy of *Miranda* warnings to the courts below, and later, stated that counsel did raise the issue in a motion to suppress. Our study of the district court file reveals that Caldwell raised a general issue as to the *Miranda* warnings in a motion to suppress filed with the magistrate judge,[5] but failed to explain why the warnings were inadequate or specifically complain that Upchurch failed to inform Caldwell of his right to counsel before or during interrogation. Motion of Defendant Anthony Caldwell to Suppress Alleged Statements of Defendant and Incorporated Memorandum of Law at 1, *United States v. Caldwell*, No. 90–12–CR(6) (E.D.Mo. Feb. 5, 1990). Neither the magistrate judge nor the district court addressed this issue,[6] and following the district court's reversal of the magistrate judge's recommendation to suppress Caldwell's statements to Upchurch, Caldwell failed to argue before the district court that the statements should be suppressed because of inadequate *Miranda* warnings.

Even if Caldwell adequately raised the objection in his motion to suppress before the magistrate judge, he failed to renew the objection before the district court, and therefore, did not properly preserve the issue for appeal.[7] *See United States v. Udey*, 748 F.2d 1231, 1240 (8th Cir.1984) (defendants failed to preserve their objection to the introduction of statements made to law enforcement officers based on the officers' failure to give *Miranda* warnings), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). Accordingly, we may review Caldwell's complaint about the adequacy of *Miranda* warnings on appeal only for plain error. *Id.* *See* Fed. R.Crim.P. 52(b).

▮▮▮ The Supreme Court has explained that the plain-error doctrine "authorizes the Courts of Appeals to correct only 'particularly egregious errors' ... that 'seriously affect the fairness, integrity or public

---

**5.** Caldwell filed a motion to suppress with the magistrate judge arguing only that his statements should be suppressed because "At no time during or prior to the interrogation was Defendant apprised and informed of his constitutional rights to an attorney and against self-incrimination as required under *Miranda v. Arizona*, 384 U.S. [436] 443 [86 S.Ct. 1602, 1611, 16 L.Ed.2d 694] (1966)."

**6.** The dissent argues that Caldwell raised the issue of adequate *Miranda* warnings in a motion to suppress filed with the magistrate judge, and that both the magistrate judge and district court considered whether Caldwell was adequately warned of his *Miranda* rights. The dissent contends that the lower courts consideration of the issue is shown by their analysis of whether Caldwell waived his rights. This argument, however, flies in the face of language in both decisions. For example, the magistrate judge observed that "Detective Upchurch properly advised [Caldwell] of his *Miranda* rights," slip op. at 9, and that Caldwell "was again advised of his Miranda rights." *Id.* at 10. Similarly, the district court judge observed that "Upchurch three times advised defendant of his constitutional rights," slip op. at 1, and that "following the

three recitations of his constitutional rights, defendant three times told Detective Upchurch his version of the events...." *Id.* at 2.

**7.** The dissent states that *United States v. Neumann*, 887 F.2d 880 (8th Cir.1989) is to the contrary. *Neumann* is not inconsistent with the result reached here. In *Neumann*, the defendant filed a motion to suppress arguing that the search warrant was defective on two grounds. The magistrate judge rejected both arguments, *id.* at 886, and the district court denied the motion to suppress.

As we have stated, the magistrate judge observed that Caldwell was properly advised of his *Miranda* rights but did not consider or decide whether Caldwell received adequate *Miranda* warnings. The magistrate judge did not decide this issue because Caldwell failed to place the question in issue. The magistrate judge granted Caldwell's motion to suppress because he concluded that Caldwell did not voluntarily and intelligently waive his rights due to his upset mental state, his mother's upset condition, and his age and inexperience. Slip op. at 9. The issue of the adequacy of *Miranda* warnings was not presented to or ruled on by the district court.

reputation of judicial proceedings.' " *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982) and *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). The plain error rule is to be " 'used sparingly,' " and only when there has been a fundamental error so basic and prejudicial that justice could not have been done, or when the error deprives the accused of a fundamental right. *Young,* 470 U.S. at 15, 105 S.Ct. at 1046 (quoting *Frady,* 456 U.S. at 163, 102 S.Ct. at 1592); *United States v. Garcia,* 897 F.2d 1413, 1422 (7th Cir.1990). The question of whether Caldwell was given adequate *Miranda* warnings is a question of law that we review de novo. *United States v. Connell,* 869 F.2d 1349, 1351 (9th Cir.1989).[8]

■ *Miranda* requires that before a custodial interrogation a suspect must be informed, among other things, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him before any questioning if he desires. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Supreme Court cases interpreting *Miranda* have never directly considered whether a suspect must be explicitly warned that he has the right to have counsel present during interrogation. Nevertheless, several decisions are instructive. The Supreme Court reaffirmed *Miranda* in *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), and in dicta, stated:

> The rule the court established in *Miranda* is clear. In order to be able to use statements obtained during custodial interrogation of the accused, the State must warn the accused prior to such questioning of his right ... to have counsel, retained or appointed, present during interrogation.

*Id.* at 717, 99 S.Ct. at 2568.

In *California v. Prysock,* 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam), the defendant argued that his *Miranda* warnings were inadequate because they failed to explicitly inform him of his right to court-appointed counsel before questioning. The Supreme Court observed that the defendant had been advised of his right to talk to an attorney before and during questioning, and to have an attorney appointed if he could not afford one. *Id.* at 361, 101 S.Ct. at 2810. Distinguishing those cases which expressly linked the right to appointed counsel to a future time *after* police interrogation, the Court held that the warning complied with *Miranda. Id.* at 360–62, 101 S.Ct. at 2809–11. The Court reasoned that the warning did not suggest "any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general," including the right to a lawyer before and during questioning. *Id.* at 360–61, 101 S.Ct. at 2809–10. In *Duckworth v. Eagan,* 492 U.S. 195, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989), the Supreme Court held that informing a suspect that an attorney would be appointed for him "if and when you go to court" did not render the *Miranda* warnings inadequate because the suspect had already been told that he had the right to an attorney before and during questioning, and he had this right to an attorney even if he could not afford one. *Id.* 109 S.Ct. at 2879–80. *Duckworth* explained that *Prysock* did not hold that a warning was necessarily defective when the warning linked the appointment of an attorney to a future point in time. *Id.* at 2880–81. Instead, the Court explained that the vice pointed out in *Prysock* was the failure to "apprise the accused of his right to have an attorney present if he chose to answer questions." *Id.*

The Supreme Court "has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant." *Prysock,* 453 U.S. at 359, 101 S.Ct. at 2809. "*Miranda* itself indicate[s] that no talismanic incanta-

---

8. The factual findings underlying the adequacy challenge are subject to clearly erroneous review. *Connell,* 869 F.2d at 1351.

tion [is] required to satisfy its strictures." *Id. Prysock* recognized that *Miranda* "announced procedural safeguards including 'the now familiar *Miranda* warnings ... *or their equivalent.*'" *Prysock,* 453 U.S. at 360, 101 S.Ct. at 2810 (quoting *Innis,* 446 U.S. at 297, 100 S.Ct. at 1687) (emphasis supplied in *Prysock* ). *Duckworth* makes clear that "[r]eviewing courts ... need not examine *Miranda* warnings as if construing a will or defining the terms of an easement." 109 S.Ct. at 2880. "The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda.*" *Id.* (quoting *Prysock,* 453 U.S. at 361, 101 S.Ct. at 2810).

Caldwell's only complaint is that Upchurch failed to specifically warn him of his right to counsel before and during the interrogation. Upchurch did, however, generally warn Caldwell that he had the right to an attorney. That warning immediately followed Upchurch's warnings that Caldwell had the right to remain silent and that anything he said could be used against him. If there was a deficiency in the warning, it is in the ambiguity of the warning, not that the warning actively misled Caldwell by suggesting a false limitation of his right to counsel.

It is true that the warnings given in both *Prysock* and *Duckworth* specifically stated that the suspect had a right to an attorney before questioning, but the claimed deficiency rejected in *Prysock* was that the suspect was not explicitly informed of his right to have an attorney *appointed* before questioning. 453 U.S. at 361, 101 S.Ct. at 2810. In *Duckworth,* the Court held the

warnings adequate when the suspect was informed that he had the right to talk to a lawyer for advice before questioning, to have him present during questioning, and that one would be appointed "if you wish, if and when you go to court." 109 S.Ct. at 2877.

It is apparent that the warning in this case does not suffer from the inadequacy discussed in both *Duckworth* and *Prysock,* namely, linking the right to appointed counsel to a future point in time after interrogation. When the only claimed deficiency is that of generality, the teaching of *Duckworth* that we are not construing a will or defining the terms of an easement convinces us that we cannot hold the warning in this case amounts to plain error.

Moreover, this court has not strictly required that a defendant be explicitly advised of his right to an attorney before and during questioning.[9] Indeed, this court in *Evans v. Swenson,* 455 F.2d 291 (8th Cir.), *cert. denied,* 408 U.S. 929, 92 S.Ct. 2508, 33 L.Ed.2d 342 (1972), affirmed the denial of the defendant's habeas corpus petition, holding that the warnings provided complied with *Miranda. Id.* at 296. In that case, a police officer advised the defendant that he had the right to make a telephone call and the right to an attorney. *Id.* at 295. We concluded that informing the defendant that he could make a telephone call right before telling the defendant that he had the right to an attorney, suggested that the defendant could call an attorney before the interrogation, and therefore, in substance complied with *Miranda. Id.* at

**9.** Several decisions from other circuits have, however, held or implied that a defendant must be specifically warned of his right to an attorney before and during police questioning. *See, e.g., Windsor v. United States,* 389 F.2d 530, 533 (5th Cir.1968) (court erred in admitting a defendant's confession in evidence when the confession followed *Miranda* warnings which failed to tell the defendant that he had a right to counsel during interrogation); *Chambers v. United States,* 391 F.2d 455, 456 (5th Cir.1968) (same); *United States v. Noti,* 731 F.2d 610, 615 (9th Cir.1984) (police *Miranda* warnings inadequate when they failed to advise the defendant of his right to counsel during police questioning). *See also Groshart v. United States,* 392 F.2d 172, 174–78 (9th Cir.1968) (defendant's statement secured in violation of the fifth amendment when customs agents failed to warn defendant of the right to the presence of an attorney during questioning and that if he could not afford an attorney, one would be appointed); *United States v. Fowler,* 476 F.2d 1091, 1092–93 (7th Cir.1973) (warnings given were inadequate when postal inspector failed to tell defendant that he had the right to an attorney before answering questions and that anything he said could be used against him); *United States v. Anthon,* 648 F.2d 669, 673 (10th Cir.1981) (warnings inadequate when drug enforcement agents failed to warn defendant of right to have counsel present during questioning and right to stop questioning), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1039, 71 L.Ed.2d 320 (1982).

296.  *Cf. South Dakota v. Long*, 465 F.2d 65, 70 (8th Cir.1972) (defendant's warnings inadequate when defendant not advised of right to presence of an attorney and right to appointed attorney); *cert. denied*, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973).[10]

A panel of this court recently declined to consider the precise question before this court in *Butzin v. Wood*, 886 F.2d 1016 (8th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2595, 110 L.Ed.2d 276 (1990). Nevertheless, Judge Beam, in a concurring opinion, indicated that the warning provided, which was almost identical to the one here, complied with *Miranda*. *Id.* at 1019. Chief Judge Lay dissented, opining that the warning was defective because it failed to specifically inform the defendant that he had a right to consult with an attorney before he was interrogated. *Id.* at 1019–23.

Narcotics agents provided almost the same warning to the defendant in *Sweeney v. United States*, 408 F.2d 121 (9th Cir. 1969), as did Upchurch in this case. *Id.* at 124.  In *Sweeney*, agents told the defendant that he had the right to remain silent, that anything he said could be used against him, that he was entitled to an attorney, and that if he could not afford an attorney one would be appointed. *Id.*  Agents also told the defendant that he could use the telephone. *Id.*  The court held that although the "warning was not as explicit as it might have been," the agents adequately communicated the substance of the *Miranda* rights. *Id.*  The court reasoned that the reference to the right to counsel immediately following the warning as to

the right to remain silent and an explanation of the risk in not remaining silent, would "be taken by most persons to refer to the contemplated interrogation." *Id.*  Accord *United States v. Lamia*, 429 F.2d 373, 376–77 (2d Cir.), *cert. denied*, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970); *United States v. Cusumano*, 429 F.2d 378, 380 (2d Cir.), *cert. denied*, 400 U.S. 830, 91 S.Ct. 61, 27 L.Ed.2d 61 (1970); *United States v. Burns*, 684 F.2d 1066, 1074–75 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983).

Similarly, the Seventh Circuit in *United States v. Adams*, 484 F.2d 357 (7th Cir. 1973), held that the warnings that the defendant had the right to remain silent, right to counsel, and court-appointed counsel were adequate. *Id.* at 361–62.  The court held that the failure to specifically inform the defendant of his right to an attorney during questioning was not fatal, especially when the police provided the warnings "on the street" and not at the police station. *Id.* at 362.  " 'It is unrealistic to expect the same degree of formality with respect to waiver and question "on the street" as in the station-house.' " *Id.* at 362 (quoting *Cusumano*, 429 F.2d at 380).

Although Upchurch could, and arguably should, have been more explicit in advising Caldwell of his right to an attorney, we believe the decisions cited above further support our conclusion that the warning provided does not rise to the level of plain error.[11]  Here, Upchurch, at the very least, advised Caldwell that he had the right to remain silent and the right to an attorney. Upchurch warned Caldwell that anything

---

**10.**  The dissent suggests that this court settled the issue presented here in *Long*, and that we have overridden the "clear statement" of the law. The warning provided in *Long*, however, differed from the one here.  The warning in *Long* failed to inform the defendant that he had a right to appointed counsel. "At most, Long was told he didn't have to say anything and that he could have a lawyer."  465 F.2d at 70.  The court pointed out that there was no further admonishment that he could stop talking at any time, that he had the right to have counsel present, and that he could have a court appointed counsel if he could not afford one. *Id.*  The major thrust of the court's decision dealt with the failure to inform Long that he had the right

to have counsel appointed. *Id.*  We do not read *Long* as settling the issue before us.

**11.**  We also note that on the state of this record, it is not entirely certain that Caldwell was not informed of his right to an attorney before and during his interrogation at the police station. The testimony of Detective Gilmore, a partner of Upchurch's, suggests that Caldwell was read his full *Miranda* warnings at that time.  Gilmore testified that he was present during Upchurch's questioning, and that Upchurch "read Caldwell his rights" from the police station waiver form.

he said could be used against him, and that if he could not afford an attorney one would be appointed. Upchurch also advised Caldwell that he had the right to a court-appointed attorney, *cf. Long*, 465 F.2d at 68, and did not link Caldwell's right to an attorney to a future point in time after police questioning. *See Prysock*, 453 U.S. at 360, 101 S.Ct. at 2810; *cf. Windsor*, 389 F.2d at 533. Moreover, the general warning that Caldwell had the right to an attorney, which immediately followed the warning that he had the right to remain silent, could not have misled Caldwell into believing that an attorney could not be present during questioning.[12] *Cf. United States v. Fox*, 403 F.2d 97, 100 (2d Cir. 1968); *see Sweeney*, 408 F.2d at 124.

Caldwell also argues that the district court erred in admitting his confessions because he did not waive his constitutional rights voluntarily, knowingly, and intelligently. Caldwell says that "coercion is determined from the perspective of the suspect," *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689, and that the suspect's mental condition is a significant factor in determining the voluntariness of a confession.

■ Whether a defendant waives his constitutional rights has two distinct inquiries. "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

■ We review the district court's factual findings concerning whether a defendant waived his rights under the clearly erroneous standard. *United States v. Bartlett*, 856 F.2d 1071, 1084–85 (8th Cir.1988). We review the ultimate determination of whether waiver occurred, however, as a question of law subject to de novo review.

*Id. See also Miller v. Fenton*, 474 U.S. 104, 115, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985) ("[T]he ultimate question of the admissibility of a confession merits treatment as a legal inquiry requiring plenary federal review").

In this case, the district court found that there was no compulsion or coercion, and made no specific factual findings regarding waiver. In denying Caldwell's motion to suppress, the district court did, however, cite *United States v. Filiberto*, 712 F.Supp. 482, 486–87 (E.D.Pa.1989), *aff'd*, 915 F.2d 1560 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 708, 112 L.Ed.2d 697 (1991). In *Filiberto*, the court held that the defendant made a valid waiver of his rights when, as here, the defendant responded to questioning without invoking his rights to counsel or to remain silent, and no evidence of police coercion existed. *Id.* Thus, we can only conclude that the district court believed that Caldwell made a valid waiver of his constitutional rights.

We have carefully reviewed the transcripts of the evidentiary hearing and trial in this case. It is undisputed that Upchurch advised Caldwell of his rights and asked him if he understood those rights on at least two occasions. *Cf. Tague v. Louisiana*, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980) (per curiam). There is no doubt that Caldwell was inexperienced, upset, and nervous when he confessed to Upchurch. Caldwell points to no conduct on the part of the police, however, which rises to the level of coercion. *See Moran*, 475 U.S. at 412, 106 S.Ct. at 1135 ("the record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements"); *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) ("*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that.") *Fare*, 442 U.S. at 726–27, 99 S.Ct. at 2572–73 (no improper interrogation tactics). Nor does Caldwell

---

12. The dissent cites a number of cases which it suggests are contrary to the opinion of this court. None of the warnings in the cited cases, however, involve the same general warning that was provided to Caldwell here.

argue that he was incapable of understanding the warnings provided him or the consequences of his decision to waive his rights. *Moran*, 475 U.S. at 422, 106 S.Ct. at 1141. Accordingly, looking at the totality of the circumstances and the entire course of police conduct, *Oregon v. Elstad*, 470 U.S. 298, 318, 105 S.Ct. 1285, 1297, 84 L.Ed.2d 222 (1985), we conclude that the government met its burden of proving that Caldwell waived his constitutional rights, and that the district court correctly denied Caldwell's motion to suppress.

The issue before us is determining whether the requirements of *Miranda* were observed in this case. We recognize the extreme harshness of the penalty which results from application of the statutory mandatory minimum ten year sentence. The harsh sentence should not cause us to decide the *Miranda* question in a manner other than required by our reading of the applicable cases.

We affirm the conviction.

LAY, Chief Judge, dissenting.

I must respectfully dissent.

The majority opinion fails to follow longstanding precedents of this court and controlling Supreme Court precedent. Equally alarming is the majority's failure to address the central issue raised and its facile reliance on the plain error rule in making its analysis. In this regard Judge Gibson's opinion fails to follow procedural rules of this circuit and ignores a controlling en banc opinion.

It will be readily discernable to all parties that the majority fails to address the basic legal issue raised. The majority says the sole issue is the adequacy of warning. The record is to the contrary. The issue

relating to adequacy of the warnings is simply part of the fundamental question addressed by the magistrate and the district court: whether Caldwell knowingly and intelligently waived his fifth amendment rights. The magistrate held that Caldwell had not knowingly and intelligently waived his fifth amendment rights; the district court did not reach this issue since it found there was no custodial interrogation and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), did not apply. The majority disagrees with the district court's findings of custodial interrogation, but then fails to address the waiver issue even though it was focused upon in the evidentiary hearing and is now raised on appeal.

The issue of waiver is clearly raised by appellant's brief.[1] To discuss waiver in terms of a knowing waiver, one must know what rights exist and then intelligently and knowingly waive them. Detective Upchurch neither informed Caldwell of his full rights, nor asked him whether he waived his rights. The magistrate's findings should be sustained.

Perhaps the majority's holding that defendant's fifth amendment privilege against self-incrimination is not violated arises from the majority's erroneous reliance on the plain error rule. The opinion acknowledges the plain error rule should be used sparingly and then only to correct "egregious errors" of law affecting the fairness and integrity of the proceedings. This discussion seemingly puts a gloss on a violation of the defendant's fifth amendment privilege against self-incrimination into the cliché of technical or harmless error. The *Miranda* rule is fundamental to the protection of the unknowing and often innocent suspect. It is a rule which the

---

1. Appellant's brief states:

The Magistrate correctly concluded that the government failed to meet its heavy burden to prove that the Defendant voluntarily, knowingly and intelligently waived his right to remain silent and to counsel. "The court must look to the totality of the circumstances to determine if the suspect's conduct manifests a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019,

82 L.Ed. 1461 (1938). *U.S. v. Filiberto*, 712 F.Supp. 482, 487 (E.D.Pa.1989). In light of the inadequacies of the *Miranda* warnings, the mental condition of the Defendant, the psychological ploys utilized by the police officers, the lack of any prior criminal history, and the lack of sophistication on the part of the eighteen year old defendant, manifest injustice will result if the verdict and conviction are not reversed.

Brief for Appellant at 14.

Supreme Court has continued to recognize and enforce to protect the individual rights of every citizen. Clearly, the rule has been violated here. Every Supreme Court decision from *Miranda* to date has reinforced the principle that "to use statements obtained during custodial interrogation of the accused, the State must warn the accused prior to such questioning of his right . . . to have counsel, retained or appointed, present during interrogation." *Fare v. Michael C.,* 442 U.S. 707, 717, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979).

The Supreme Court, as late as 1989, reaffirmed this principle in *Duckworth v. Eagan,* 492 U.S. 195, 204, 109 S.Ct. 2875, 2880, 106 L.Ed.2d 166 (1989). There can be little doubt in the present case that Caldwell, an eighteen-year-old youth with no prior criminal experience, was not informed that he had a right to consult with a lawyer *before* questioning and to have a lawyer present during questioning. He clearly could not make an intelligent and knowing waiver of rights of which he was not aware. In *Miranda,* the Court stated "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475, 86 S.Ct. at 1628.

Unlike the warnings administered in several cases relied upon by the majority, the statement read to Caldwell by Detective Upchurch *did not* offer him the opportunity to make a telephone call from which the right to consult a lawyer could be inferred. *Cf. Evans v. Swenson,* 455 F.2d 291 (8th Cir.), *cert. denied,* 408 U.S. 929, 92 S.Ct. 2508, 33 L.Ed.2d 342 (1972); *Sweeney v. United States,* 408 F.2d 121 (9th Cir.1969). It clearly did not provide an inference that counsel could be consulted before and present during questioning. It is one thing to say that a particular ritual need not be followed and that only an equivalent warning need be made. *See, e.g., California v. Prysock,* 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981) (per curiam). However, no case equates one part of the

*Miranda* warning into the equivalence of any other part. Each of the four-part warnings relate to a different cautionary concern set out in *Miranda* to protect an accused's fifth amendment right against self-incrimination. To inform someone he has the right to remain silent does not tell him he has a right to counsel. To warn someone he has a right to have counsel appointed does not inform the accused he can consult with counsel before questioning and have counsel present at the interrogation. *See* cases cited *infra.*

One must assume the majority analysis as to the *Miranda* warning is directly related to the court's analysis of plain error. If not, why has the court belabored such discussion? Although it is somewhat dubious, surely, I hope the court is not holding that as a matter of law the *Miranda* warnings given were adequate. If that is the intent of the majority opinion, then clearly the court has erred. Such a holding would be contrary to specific holdings of the Supreme Court, this court and the overwhelming majority of the court of appeals of this country. *See, e.g., Duckworth,* 492 U.S. at 204, 109 S.Ct. at 2880 (holding that *Miranda* requires "the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one."); *Prysock,* 453 U.S. at 361, 101 S.Ct. at 2810 (holding that the warnings given were adequate under *Miranda* since the defendant "was told of his right to have a lawyer present prior to and during interrogation, and his right to have a lawyer appointed at no cost if he could not afford one."); *United States v. Bland,* 908 F.2d 471, 474 (9th Cir.1990) (warnings given were held to be inadequate since they did not advise the defendant of his right to have an attorney present during questioning); *Guam v. Snaer,* 758 F.2d 1341, 1343 (9th Cir.1984) (warning which informed defendant of his right to consult a lawyer and his right to have a lawyer present during questioning "meets the minimum requirements of the Constitution," though "it would not be amiss for Guam to revise its form to more clearly warn of the

right to consult with counsel before questioning."), *cert. denied,* 474 U.S. 828, 106 S.Ct. 90, 88 L.Ed.2d 74 (1985); *United States v. Noti,* 731 F.2d 610, 614–615 (9th Cir.1984) (warning held to be inadequate where it failed to inform the defendant that he had a right to counsel during questioning as well as before questioning); *United States v. Contreras,* 667 F.2d 976 (11th Cir.) (warning held to be sufficient since it informed the defendant of his right to consult with an attorney prior to questioning, to have an attorney present during questioning, and to have counsel appointed), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982); *United States v. Anthon,* 648 F.2d 669, 673 (10th Cir.1981) (warnings held to be inadequate since the defendant was not advised that his right to counsel encompassed the right to have counsel present during any questioning and the right to have an attorney appointed if he could not afford one), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1039, 71 L.Ed.2d 320 (1982); *United States v. Stewart,* 576 F.2d 50, 54 (5th Cir.1978) (same); *United States v. Fowler,* 476 F.2d 1091, 1093 (7th Cir. 1973) (warnings held to be insufficient because they failed to warn the defendant that he had the right to counsel before answering questions); *Sanchez v. Beto,* 467 F.2d 513, 515 (5th Cir.1972) (confession inadmissable since defendant was not advised that he had a right to have counsel present during interrogation), *cert. denied,* 411 U.S. 921, 93 S.Ct. 1548, 36 L.Ed.2d 314 (1973); *United States v. Rizzo,* 418 F.2d 71 (7th Cir.1969) (had defendant raised his objection prior to appeal, his incriminating statements would have been suppressed since the warning he was given failed to inform of the right to have an attorney present during any interrogation), *cert. denied,* 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 (1970); *Gilpin v. United States,* 415 F.2d 638, 640–41 (5th Cir.1969) (warning held to be insufficient since it did not indicate that the defendant had the right to have appointed counsel present during the interrogation); *Caparossa v. Government of Canal Zone,* 411 F.2d 956 (5th Cir.1969) (defendant not adequately advised of his constitutional rights when po-

lice failed to inform him that he had a right to have counsel present during his interrogation); *Atwell v. United States,* 398 F.2d 507 (5th Cir.1968) (advising defendant that he was entitled to consult with an attorney, retained or appointed, "at anytime" did not comply with *Miranda* directive that an individual held for questioning must be clearly informed that he has the right to consult counsel before and during questioning); *Groshart v. United States,* 392 F.2d 172, 175 (9th Cir.1968) (warning administered by customs agents held to be constitutionally inadequate since it failed to warn defendant of his right to the presence of an attorney during questioning and his right to have an attorney appointed if he could not afford one); *Chambers v. United States,* 391 F.2d 455 (5th Cir.1968) (incriminating statements held to be inadmissable because defendant was not advised that he was entitled to the presence of counsel during the interrogation); *Windsor v. United States,* 389 F.2d 530, 533 (5th Cir. 1968) (same); *Fendley v. United States,* 384 F.2d 923 (5th Cir.1967) (per curiam) (warnings held to be insufficient since they did not advise of the right to have appointed counsel present during the interrogation).

The court urges that its analysis must be made under the plain error doctrine because no objection was made at the trial. This thesis is based on the conclusion that Caldwell did not (1) address this issue in his motion to suppress and (2) if he did, then he effectively waived the issue by not renewing his objection at trial. With all due respect, the first premise ignores the clear record, the second premise ignores the clear law.

The record shows that Caldwell raised the issue of the sufficiency of the warning in his motion to suppress. The motion reads that Caldwell was not "apprised and informed of his constitutional rights to an attorney and against self-incrimination as required under *Miranda v. Arizona,* 384 U.S. [436] 443, 86 S.Ct. 1602 [1611, 16 L.Ed.2d 694] (1966)." (Def.'s Mot. Suppress at 1).

The magistrate's findings which were based on his assessment of the totality of circumstances found no intelligent and knowing waiver by Caldwell of any of the statements.[2] The government appealed. The district court disagreed with the magistrate's findings only as to the second statement made to Upchurch. The district court did suppress Caldwell's initial statement given to Officer Washington. The majority opinion states that the district court's reasoning is confusing. I find it very clear. In its order denying Caldwell's motion to suppress the statements elicited by Detective Upchurch, the district court observes:

> The Court finds that these circumstances [officer Upchurch's interrogation] do not "rise to the level of compulsion or coercion to speak," *Illinios v. Perkins,* [496] U.S. [292, 299], 110 S.Ct. 2394, 2397, [110 L.Ed.2d 243] (1990), and so "are not within *Miranda's* concerns." *Id.* Moreover, "[t]he prophylactic *Miranda* warnings

are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.... The inquiry is simply whether the warnings reasonably 'convey[y] [sic] to [a suspect] his rights as required by *Miranda.'*" *Duckworth v. Eagan,* [492] U.S. [195, 203], 109 S.Ct. 2875, 2880, [106 L.Ed.2d 166] (1989). *See, also, United States v. Filiberto,* 712 F.Supp. 482, 486–87 (E.D.Pa.1989). Accordingly,

IT IS FURTHER ORDERED that defendant's motion to suppress statements made to Officer Washington be and it is granted.

IT IS FURTHER ORDERED that defendant's motion to suppress statements made to Detective Upchurch be and it is denied.

*United States v. Caldwell,* No. 90–12–CR(6) at 2 (E.D.Mo. Aug. 2, 1990) (Ord. Denying in part Def.'s Mot. Suppress).

2. The magistrate found:

> After defendant quickly returned involuntarily to the apartment, the circumstances in the apartment were such that defendant was in a custodial environment. Washington immediately questioned defendant about the package. Defendant's mother was openly very upset. Everyone knew and disapproved of his admitted involvement with the package. Defendant remained in the apartment until Det. Upchurch arrived. Because Officer Washington did not advise defendant of his *Miranda* rights, the statements defendant made to him before Det. Upchurch arrived should be suppressed. *Miranda, supra,* 384 U.S. *at* 479, 86 S.Ct. at 1630.
>
> The next issue is whether the government bore its heavy burden of proving that defendant's statements to Det. Upchurch were preceded by defendant's voluntary, knowing and intelligent waiver of his rights to remain silent and to counsel. *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628; *Tague v. Louisiana,* 444 U.S. 469, 470–71, 100 S.Ct. 652, 653, 62 L.Ed.2d 622 (1980); *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). The undersigned concludes that the government did not sustain its heavy burden in this case.
>
> After he arrived and determined that the package contained cocaine and before he asked defendant any questions, Det. Upchurch properly advised him of his *Miranda* rights. Defendant only nodded that he understood them. Because the defendant's mother was so upset, the detective took defendant into the living room to be interviewed. Again, before

asking him any questions, Upchurch asked defendant whether he still understood his rights. Defendant hesitatingly said that he did understand them. Defendant repeated the story he had told Washington.

> Defendant did not voluntarily and intelligently waive his rights in the apartment, because his mental state at the time was very upset, his mother remained very upset with the whole situation, and his age and experience were not shown to have been sufficient to deal with the pressures of the investigation by his mother and neighbors and the direction from Officer Washington to cooperate with Det. Upchurch. Although he was asked whether he understood his rights, there was no evidence that he was then expressly asked whether he would waive them. He had previously given incriminating statements and he may have felt compelled to repeat the same statements in the presence of the narcotics detective.
>
> The circumstances of the police station interrogation by Det. Upchurch remained such that defendant was not shown to have intelligently waived his rights to remain silent and to counsel. Although he was again advised of his *Miranda* rights and stated that he understood them, he was not asked expressly whether he would waive them. Further, the police station interview closely followed the apartment interviews and their pressure packed circumstances. When he was asked whether or not he would give a written statement, defendant angrily said that he would not and that he would say no more.

(Mag. Ord. and Rec. at 8–10).

Notwithstanding its clarity, the district court's findings are clearly erroneous. The district court overlooked the fact that when Caldwell came back in the house, Upchurch had inspected the package and had determined it contained crack cocaine. Caldwell was told by Washington that it would be in his best interest to be cooperative with Upchurch. There was no question the investigation had focused on Caldwell and that his interrogation was custodial in nature. The district court accepted the magistrate's finding that the earlier statement to Officer Washington had to be suppressed. This was based on a custodial examination. The government did not cross-appeal this finding. Thus, the government is bound by the district court's finding that Washington's interrogation was custodial. If Caldwell was under custody when Washington examined him, it is hardly reasonable to urge the subsequent questioning by Upchurch was not custodial. Upchurch certainly viewed his interrogation as custodial; he attempted to give Caldwell the *Miranda* warnings. The majority disagreed with the district court and finds "the facts persuade us that Caldwell was in custody for *Miranda* purposes...." (Op. at 499).

I recite the above because it demonstrates that both the magistrate and the district court judge recognized that within the issue of waiver the adequacy of warnings were specifically addressed by Caldwell's motion to suppress. There is no question that the district court understood this issue when it wrote in its order "[t]he inquiry is simply whether the warnings reasonably 'convey[y] [sic] to [a suspect] his rights as required by *Miranda*.'" *Caldwell* at 2 (quoting *Duckworth*, 492 U.S. at 203, 109 S.Ct. at 2879). This court should not so grudgingly and technically assess the record below. This is especially true when the motion to suppress, as well as the magistrate's and district court's reviews, explicitly recognizes the issue being raised. The fact that the magistrate sustained the motion on grounds that Caldwell did not knowingly and voluntarily waive his rights does not negate the fact that petitioner addressed the adequacy of the warning.

The waiver issue clearly subsumes the question of the inadequate warning. To urge otherwise exalts form over substance—technicality over reality—and completely eviscerates an individual's fifth amendment privilege by judicial oversight.

The majority opinion states even if Caldwell raised the issue in the motion to suppress, he nevertheless did not preserve the issue for appeal because he failed to renew his objection to the statements at trial. Thus, the majority bottoms its analysis on the plain error rule because of the defendant's failure to renew his objection to the admission of the statement at trial. The majority relies on *United States v. Udey*, 748 F.2d 1231 (8th Cir.1984), to hold that the failure to object at trial does not preserve the ruling on the motion to suppress. *Udey* clearly does not hold this. I authored the *Udey* opinion. Nothing in *Udey* can be read to mean this. In *Udey* there was *no* motion to suppress and no later objection at trial. Under those circumstances, this court held the issue was not preserved. The majority does not address *United States v. Neumann*, 887 F.2d 880 (8th Cir. 1989) (en banc), a case in which Judge Gibson joined, where we held that once a motion to suppress is made *it is not necessary to renew such a motion before trial.* Relying on Supreme Court precedent, *Neumann* held as follows:

> By motion before trial, a criminal defendant is permitted to raise any objection "capable of determination without the trial of the general issue," but motions to suppress evidence *must* be raised prior to trial. Fed.R.Crim.P. 12(b). *We note, in addition, that such a mandatory pretrial motion to suppress, filed on constitutional grounds in a criminal case, if denied, does not ordinarily have to be renewed by way of objection at trial.* The failure to raise an objection which must, under the Rule, be made prior to trial, effects a waiver of the objection. Fed.R.Crim.P. 12(f).

*Id.* at 885 (emphasis added).

Thus, I respectfully submit that analysis of this case under the plain error rule is wrong. The defendant did raise the ade-

quacy of the *Miranda* warning in his motion to suppress. This is all he needed to do. Notwithstanding the absence of objection at the trial, the issue was clearly preserved for our consideration.

Overwhelming authority holds that Caldwell was not given proper warnings. This court settled this issue in 1972. Judge Ross then wrote:

> While it is true it is the substance of the warnings, not the form, that is important, *Evans v. Swenson*, 455 F.2d 291, 293 (8th Cir.1972); *Tucker v. United States*, 375 F.2d 363, 369 (8th Cir.), *cert. denied*, 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967), the warnings given must be complete and meaningful to the accused. As stated by the Ninth Circuit, in *Smith v. Rhay*, 419 F.2d 160, 163 (1969), warnings are inadequate where the accused, although advised he had the right to an attorney, was not advised that "he had the right to the presence of an attorney and that, if he could not afford one, a lawyer could be appointed to represent him *prior to any questioning*."

*South Dakota v. Long*, 465 F.2d 65, 70 (8th Cir.1972).

It is difficult for me to understand how the majority can override, without en banc approval, this clear statement of the law.

I would find as did the experienced magistrate (who held the evidentiary hearing, heard the witnesses and was able to assess the credibility of Caldwell and the officers) that the defendant did not voluntarily, knowingly and intelligently waive his rights to remain silent and to have counsel present before and during the questioning by the police officers.[3]

I add one other commentary. This case involves the conviction of an eighteen-year-old youth, without any prior criminal experience, who made a serious mistake of judgment. He now faces a ten year prison sentence for his immature judgment. If this sentence is carried out, his life will be ruined. His family is devastated. It is difficult for me to believe Congress by its mandatory minimum penalty condones such punitive sanction to a young lad of eighteen. I wonder if Congress knows the injustice it creates by such laws. A civilized society should protest. The President of the United States should grant clemency. In my twenty-five years as a circuit judge I have never encountered such a miscarriage of justice. This gross injustice further emphasizes why denial of this young man's fifth amendment rights should require a reversal of his conviction.

I respectfully dissent.

---

3. The magistrate concluded as follows:
   [The] issue is whether the government bore its heavy burden of proving that defendant's statements to Det. Upchurch were preceded by defendant's voluntary, knowing and intelligent waiver of his rights to remain silent and to counsel. *Miranda, supra,* 384 U.S. at 475 [86 S.Ct. at 1628]; *Tague v. Louisiana,* 444 U.S. 469, 470–71 [100 S.Ct. 652, 652–53, 62 L.Ed.2d 622] (1980); *North Carolina v. Butler,* 441 U.S. 369, 373 [99 S.Ct. 1755, 1757, 60 L.Ed.2d 286] (1979). The undersigned concludes that the government did not sustain its heavy burden in this case.
   (Mag. Ord. and Rec. at 9).