### UNITED STATES of America

#### v.

**Filippo FILIBERTO, a/k/a Phillip, and Francesco Badalamenti, a/k/a Frankie.**

**Crim. Nos. 89–00003–10, 89–00003–14.**

United States District Court,
E.D. Pennsylvania.

April 17, 1989.

Michael M. Baylson, U.S. Atty., Michael L. Seigel, Strike Force, Crim. Div., U.S. Dept. of Justice, Philadelphia, Pa., for plaintiff.

O. Robert Silverstein, Philadelphia, Pa., for Filippo Filiberto.

Stephen Patrizio, Philadelphia, Pa., for Francesco Badalamenti.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are the motions of defendants Filippo Filiberto and Francesco Badalamenti to suppress physical evidence obtained pursuant to a search of the defendants' respective premises, and to suppress post-arrest statements. For the reasons set forth herein, defendants' motions to suppress physical evidence are *denied,* and defendants' motions to suppress post-arrest statements are *granted in part* and *denied in part.*

## I. BACKGROUND

In the early morning hours of December 1, 1988, the Federal Bureau of Investigation ("FBI"), in cooperation with local law enforcement authorities, executed arrest and search warrants throughout the country and in Italy under "Operation Iron Tower," an investigation into the transnational importation and distribution of narcotics. The FBI's warrants[1] in this case were issued as a result of the filing of a criminal complaint in the Eastern District of Pennsylvania charging defendant Badalamenti with one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and one count of distribution of cocaine under 21 U.S.C. § 841(a)(1), and defendant Filiberto with the same charge of conspiracy and two counts of distribution under § 841(a)(1).[2]

The warrant and complaint were primarily supported by a 53-page affidavit submitted and sworn to on November 30, 1988, by FBI Agent Paul Hayes, Jr. ("Hayes affidavit"). The affidavit outlined the

---

1. In addition to the FBI warrants, the Cherry Hill Police Department had a warrant for Badalamenti's arrest for an alleged strong-arm robbery committed in 1986. The Cherry Hill police released Badalamenti into the custody of the FBI pursuant to the federal arrest warrants.

2. The criminal complaint formed the basis of a twenty-count indictment returned against eighteen defendants in January, 1989, *United States v. Francesco Gambino, et al.,* Crim. No. 89–00003. The court severed the case on February 9, 1989, allowing the charges against six defendants, including defendants Badalamenti and Filiberto, to proceed to trial scheduled to commence on April 3, 1989. On March 6, 1989, the court dismissed Count 16 charging defendant Badalamenti with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and Count 15 charging defendant Filiberto with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), for improper venue.

government's investigation, including the extensive use of electronic surveillance, and the expected testimony of government witnesses. The warrants for the arrest of Badalamenti and Filiberto were issued by United States Magistrate Tullio Gene Leomporra of the Eastern District of Pennsylvania. In addition, the FBI possessed a search warrant for defendant Filiberto's premises.[3]

Defendants challenge the legality of these arrests and searches on several grounds. First, defendants refute the magistrates' findings of probable cause to support the issuance of arrest and search warrants. Second, defendants contend that the searches conducted were overbroad and amounted to a general exploratory search in violation of the Fourth Amendment. Third, defendants contend that the information supporting the warrants was stale. Fourth, defendants allege that law enforcement personnel failed to announce their purpose and authority before entering the respective premises and executing their warrants. Fifth, and finally, defendant Badalamenti seeks to suppress certain post-arrest statements allegedly obtained in violation of his Fifth and Sixth Amendment rights as outlined by the Supreme Court's opinion in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[4]

## II. DISCUSSION

### A. Francesco Badalamenti

The following is a summary of the testimony of FBI Agents Charles B. Warner and Frederick A. Walz, Sergeant Richard Thomlinson of the Cherry Hill Police Department, and defendant Francesco Badalamenti, given at a hearing on defendant's motion conducted by the court on March 29, 1989. At or about 2:00 A.M. on December 1, 1988, FBI agents and officers of the Cherry Hill Police Department arrived at defendant Badalamenti's residence located at 106 Barclay Walk, Cherry Hill, New Jersey. The agents testified that they knocked at the front door and announced that they were there to execute a warrant for the arrest of Francesco Badalamenti. The front door to the residence was opened by co-defendant Antonio Romano, and the authorities entered.

A team of agents and officers led by Special Agent Walz immediately ascended the stairs. Testimony shows that the agents announced their purpose and authority and proceeded to a bedroom, where they located defendant Badalamenti and his girlfriend and placed him under arrest. Badalamenti remained unhandcuffed and was permitted to enter a bedroom closet to put on a pair of jogging pants.

As Badalamenti was being secured, a second team of officers and agents, including Sergeant Thomlinson, entered the room to conduct a cursory search for weapons incident to defendant's arrest. Soon after entering, and while defendant remained unhandcuffed and undressed at the far corner of the room, Sergeant Thomlinson noticed a shaving kit on the shelf of an open closet. The shelf was above eye level, but the bag was unzipped forming an open "v" at the top. Sergeant Thomlinson reached up and took the kit from the shelf. Immediately upon bringing it down, he noticed a white powdery substance in a glassine bag, which he suspected was cocaine.[5] Sergeant Thomlinson placed the bag on defendant's bed and informed Agent Walz of his dis-

---

**3.** Special Agent Frederick A. Walz also obtained a telephonic search warrant for the premises of defendant Badalamenti from United States Magistrate Jerome B. Simandle of the District of New Jersey at 5:25 A.M. of the morning in question. *See* Fed.R.Crim.P. 41(c)(2)(A). Since this warrant was obtained after the search in question, it will not be considered for purposes of this opinion.

**4.** Defendant Filiberto has also filed a motion to suppress post-arrest statements. However, at a hearing held by the court on March 29, 1989,

the government represented that they were not in possession of any statements made by defendant Filiberto during the course of his arrest. The court will therefore consider this motion moot.

**5.** The powder was subsequently field tested by Inspector Michael King of the Burlington County Prosecutors Office. It weighed about one and one-half ounces and tested positive for cocaine.

covery. The entire episode lasted about 10 minutes.

Agent Walz asked defendant about the substance which they had concluded was cocaine. Badalamenti acknowledged that the shaving kit was his, but denied any knowledge or ownership of the cocaine and alluded to the fact that law enforcement authorities may have placed it there. The defendant was then brought downstairs to a kitchen where he was read his rights in both English and Italian. Defendant was presented with a form requesting him to waive his right to remain silent, which he refused to sign. However, upon questioning from Agent Walz, defendant repeated that he owned the shaving kit and all of its contents except the cocaine and again accused the authorities of "planting" it there.

■ As a threshold matter, the court finds that the information supporting the issuance of the arrest warrant was sufficient to establish probable cause in this case. The Hayes affidavit supporting the warrant summarizes the government's extensive investigation into alleged narcotics trafficking at Leo's Pizza Palace in Pitman, New Jersey, where defendant Badalamenti was employed. Paragraph 36 of the affidavit discusses the evidence against Badalamenti:

> On October 23, 1986, at approximately 4:37 p.m., in Leo's Pizza Palace, Francesco Badalamenti and Sylvia [sic] Colli were intercepted in a narcotics-related discussion. Colli stated "he likes the stuff" but said that she needed the figures to give a price. She asked, "Can you call Phillip or something?" (Your affiant notes that "Phillip" is the English version of the name "Filippo," and submits that this was a reference to Filippo Filiberto.) Badalamenti was cautious because he did not know the buyer, a friend of Colli. She argued that he had already given the buyer "a sample." Badalamenti responded, "We're in business—we'll work on it.... You're not just fucking with kids. We give you life, we give you death."

Hayes Affidavit, at para. 36.

■ Reading the affidavit as a whole, this information is sufficient to establish the quantum of proof necessary to support an arrest warrant. As the Supreme Court stated in *Brinegar v. United States*, 338 U.S. 160, 173, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879 (1949), "[t]here is a large difference between the two things to be proved [guilt versus probable cause] as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them." Moreover, law enforcement authorities are permitted and expected to draw reasonable inferences based on their knowledge and experience, *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975), and such conclusions should not be defeated by hypertechnical readings of affidavits by judges or magistrates, *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir.1983). Consequently, the court finds that probable cause existed to issue the warrant for defendant Badalamenti's arrest.

Defendant also challenges the search conducted by the authorities, and specifically Sergeant Thomlinson, as an overbroad exploratory search in violation of the Fourth Amendment, and accordingly seeks suppression of the cocaine discovered in his shaving kit. The Supreme Court established the standard for a valid warrantless search incident to an arrest in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In *Chimel*, the Court held that arresting officers may search the area "within [the] immediate control" of the arrestee for their own safety and to protect against the destruction of evidence. 395 U.S. at 763, 89 S.Ct. at 2040. The confines of this area of "immediate control" is, by definition, a function of the circumstances of the search and arrest and the degree to which the defendant is confined. Hence, courts have extended the area of "immediate control" where an arrestee has been permitted to remain unhandcuffed and allowed to move around an unsecured area. *See, e.g., Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 70

L.Ed.2d 778 (1982) (police permitted to seize cocaine found in plain view when accompanying arrestee into his dormitory room); *United States v. Palumbo*, 735 F.2d 1095 (8th Cir.1984) (cocaine found behind dresser drawer after defendant was placed under arrest was properly seized incident thereto); *United States v. Smith*, 565 F.2d 292 (4th Cir.1977) (search of jacket prior to giving it to arrestee); *United States v. Patterson*, 447 F.2d 424 (10th Cir.1971), *cert. denied*, 404 U.S. 1064, 92 S.Ct. 748, 30 L.Ed.2d 752 (1972) (search of suitcase from which arrestee was to get jacket).

■ Under this standard, it is clear that the search conducted by Sergeant Thomlinson was a valid search incident to arrest. The cocaine was located contemporaneous with defendant Badalamenti's arrest. It was discovered in an open closet in the bedroom in which Badalamenti remained unhandcuffed and continued to move about while getting dressed. The shaving kit was itself open. The court therefore finds that there was more than ample basis for the officers to conclude that defendant could have gained access to the closet to secure a weapon or destroy evidence. The motion to suppress the cocaine found by Sergeant Thomlinson as the fruits of an illegal search is accordingly denied.

■ Defendant next argues that the information contained in the Hayes affidavit establishing probable cause for arrest was stale as it relates to defendant. In order to support a valid arrest warrant, probable cause must exist at the time the government seeks to make the arrest. *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The intercepted conversation linking defendant to the alleged conspiracy set forth in Count 3 of the indictment took place on October 23, 1986, Hayes Affidavit at para. 36, approximately two years prior to the date of arrest. However, the evidence outlined in the affidavit and the contents of the complaint indicate a continuous course of narcotics trafficking at the location where defendant continued to be employed.[6] Given the nature of this alleged crime and the circumstances surrounding the conspiracy, the court finds that the information contained in the Hayes affidavit was not stale. *United States v. Forsythe*, 560 F.2d 1127 (3d Cir.1977). *See also United States v. Martino*, 664 F.2d 860 (2d Cir.1981), *cert. denied*, 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982); *United States v. Bruner*, 657 F.2d 1278 (D.C.Cir.1981).

■ Finally, defendant seeks to suppress statements made during the course of his arrest. Defendant contends that his responses to the questioning by Special Agent Walz regarding ownership of the cocaine were made in violation of his Fifth and Sixth Amendment rights and right to due process under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government concedes, as it must, that the statements made by defendant in his bedroom in response to questioning by Agent Walz, and before he was read his rights, violate *Miranda* and must be suppressed. Consequently, defendant's motion will be granted to this extent. Defendant, however, further argues that the continued questioning by Agent Walz after he was read his rights and refused to sign a form of waiver was likewise a violation of *Miranda* and requires the court to suppress defendant's subsequent responses. The court does not agree.

■ In order to ensure that confessions or admissions by a defendant are truly voluntary, the Supreme Court in *Miranda* required that a defendant be advised of his constitutional rights prior to custodial interrogation. The foundation for this holding is that custodial interrogations are inherently coercive and thereby presumed to be involuntary. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *Tague v. Louisiana*, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980). It is clear, however, that a defendant may waive his *Miranda* rights.

---

**6.** The indictment alleges that the conspiracy to distribute cocaine outlined in Count 3 existed between January 1985 and December 1, 1988.

*North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Moreover, failure to sign a form of waiver does not preclude a finding of waiver, nor does it make further questioning a violation of defendant's constitutional rights. *See United States v. Klein,* 592 F.2d 909 (5th Cir.1979); *United States v. Stewart,* 585 F.2d 799 (5th Cir.1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979); *United States v. DiGiacomo,* 579 F.2d 1211 (10th Cir.1978). The court must look to the totality of the circumstances to determine if the suspect's conduct manifests a "knowing and intelligent relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Under the present circumstances, the court does not believe that the statements given by defendant after he was read his *Miranda* rights were involuntarily coerced. Although defendant did refuse to sign a form of waiver, testimony shows that he responded to subsequent questions by Agent Walz without invoking his right to counsel or to remain silent. This procedure is consonant with the Supreme Court's requirements under *Miranda. See Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Furthermore, there is no evidence of coercive police conduct, the hallmark of a violation under *Miranda. Colorado v. Connelly,* 479 U.S. 157, 163, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986). The court therefore holds that defendant Badalamenti's responses to questioning after he was read his rights were voluntary and should not be suppressed.[7]

### B. Filippo Filiberto

On December 1, 1988, agents of the FBI and officers of the Cherry Hill Police Department, armed with search and arrest warrants, arrested defendant Filiberto in his home at Playa del Sol Condominiums in Cherry Hill, New Jersey. The search of defendant's apartment resulted in the seizure of alleged drug paraphenalia, including a digital scale and two boxes of plastic freezer bags, and a Smith and Wesson .38 caliber revolver. Defendant seeks to suppress this evidence on the ground that the search and arrest warrants lacked probable cause.[8]

The warrants issued against defendant Filiberto were supported by the identical criminal complaint and affidavit sworn to by Special Agent Hayes, and likewise alleges involvement in a continuing conspiracy to distribute cocaine as well as one count of cocaine distribution. As discussed above, this information is not stale so as to preclude a finding of probable cause. *Forsythe, supra,* 560 F.2d 1127.

■ Defendant also claims that the evidence outlined in the Hayes affidavit is insufficient to establish probable cause linking defendant Filiberto to this conspiracy or to the one count of cocaine distribution set forth in Count 14 of the indictment. The court disagrees. Paragraph 30 of the Hayes affidavit alleges that seventeen fingerprints identified as defendant Filiberto's were found on a half-pound package of cocaine that co-defendant Salvatore DiMaio had supplied to a government witness on June 25, 1988. Furthermore, paragraphs 31 to 34 describe a separate transaction involving the sale of one-quarter pound of cocaine in November, 1988, between defendant Filiberto and another witness cooperating with the FBI. This transaction was consensually recorded through use of a body wire and the bills used to pay for the cocaine were photocopied before the ex-

---

7. Defendant also alleges that the officers and agents failed to announce their purpose and authority before entering his premises. Uncontradicted testimony by Agents Walz and Warner and Sergeant Thomlinson directly refutes this allegation. Consequently, defendant's motion to suppress on these grounds is likewise denied.

8. As discussed in note 4, *supra,* defendant Filiberto made an additional motion to suppress post-arrest statements which is deemed moot.

Defendant has also moved to suppress physical evidence on the ground that law enforcement personnel failed to announce their purpose and authority. However, at a hearing conducted by the court on March 29, 1989, counsel for defendant Filiberto stated that he wished to have the court consider only the papers and that testimony was unnecessary. Consequently, the court will consider this ground for suppression waived.

change. Clearly this is a sufficient quantum of proof to satisfy the issuance of an arrest warrant. *Brinegar, supra,* 338 U.S. at 173, 69 S.Ct. at 1309.

 Finally, defendant alleges that no probable cause existed for the issuance of a search warrant in this case. Given the allegations in the Hayes affidavit that defendant had used the premises in question to make arrangements for the delivery of a quarter pound of cocaine, to deliver that cocaine, and to collect money for its delivery, the court finds that there was a sufficient basis for the magistrate's conclusion that probable cause existed to support the belief that a search of defendant's premises would uncover evidence of wrongdoing or the instrumentalities of a crime. *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Tehfe, supra,* 722 F.2d 1114.

## III. CONCLUSION

For the above-stated reasons, the court concludes that the motions of defendants Francesco Badalamenti and Filippo Filiberto to suppress physical evidence are denied, and the motion of defendant Badalamenti to suppress post-arrest statements is granted as to statements made prior to the reading of his rights and denied as to statements made thereafter.