NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3166-14T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

WILLIAM A. SPARROW, a/k/a
JONATHAN TAYLOR, DAVID GIBSON
and ILL WILL,

 Defendant-Appellant.
____________________________________

 Submitted April 4, 2017 – Decided August 2, 2017

 Before Judges Ostrer and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Hudson County,
 Indictment No. 12-12-2128.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Frank Pugliese, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Esther Suarez, Hudson County Prosecutor,
 attorney for respondent (Eric P. Knowles,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM
 Defendant William A. Sparrow appeals his convictions

following a guilty plea for leaving the scene of a fatal motor

vehicle accident and possession of a handgun by a person not

permitted to possess weapons. More particularly, he challenges the

trial court's denial of his motion to suppress statements he made

during a custodial interrogation. We affirm.

 I.

 Jersey City police officers responded to a report of guns

being fired in the parking lot of a diner. They discovered a

fatally injured man wedged between a motor vehicle and the diner's

wall. It was reported the vehicle's driver and passenger were

involved in an exchange of gunfire with others in the parking lot,

during which the vehicle crashed into the wall causing the victim's

death. The vehicle's driver, who was identified as defendant, left

the scene before the police arrived.

 About two months later, the police located defendant and when

they approached him, he fled on foot and reportedly dropped a

handgun. Defendant was apprehended, found in possession of heroin,

and taken into custody. During a recorded custodial interrogation

of defendant, he acknowledged being the vehicle's driver at the

diner.

 Defendant was charged in an indictment with criminal offenses

related to the diner incident and the events at the time of his

 2 A-3166-14T1
arrest. He moved to suppress the statements made during his

interrogation, claiming the police failed to properly advise him

of his Miranda1 rights and honor an alleged invocation of his right

to remain silent.

 During the evidentiary hearing on defendant's motion, the

State presented testimony from Detective Roberto Aviles, one of

the officers who interrogated defendant. A recording of the

interrogation was admitted in evidence.

 The recording showed defendant was interrogated by Aviles and

Detective Jeff Kearns. Aviles told defendant that prior to asking

any questions, he wanted to advise defendant of his rights and

that defendant must understand his rights. Aviles then read to

defendant the following from a Miranda rights form:

 You have the right to remain silent. Anything
 you say can and will be used against you in a
 court of law. You have the right to talk to a
 lawyer for advice before we ask you any
 questions, and to have him or her with you
 during questioning. If you cannot afford a
 lawyer, one will be appointed for you at the
 point of questioning if you wish. If you
 decide to answer questions without a lawyer
 present, you would still have a right to stop
 questioning at any time. You also have the
 right to stop answering at any time until you
 talk to a lawyer.

1
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 3 A-3166-14T1
After Aviles read the Miranda rights to defendant, Kearns asked

defendant if he understood everything Aviles told him. Defendant

nodded his head affirmatively and said "yes."

 Aviles gave defendant the Miranda rights form. It included

the following paragraph:

 I have read the statement of my rights and
 understand what my rights are. I am willing
 to make a statement and answer questions. I
 do not want a lawyer at this time. I understand
 and know what I am doing. No promises or
 threats have been made to me, and no pressure
 or coercion of any kind has been used against
 me.

Aviles asked defendant to read the paragraph aloud and defendant

did so.

 When defendant concluded reading the paragraph, Kearns

explained that "basically" what it meant was:

 . . . (inaudible) ask you a couple of questions
 about our investigation, maybe clear some
 things up. No one is taking you and beating
 you up, making any promises. I just have a
 couple of questions I wanted to ask you so we
 can get it out of the way and we can go about
 our business.

 That's all basically what paragraph
 states in that you're here. We want to talk
 to you about the reason why down here. And no
 one basically threatened you or beat you up
 and said sign this paper or we'll [sic] going
 to kick your ass if you don't talk to us.

The detectives then asked if defendant was willing to talk to

them, and defendant said they could ask him questions. Defendant

 4 A-3166-14T1
signed the Miranda rights waiver form and the detectives began the

interrogation.

 During the interrogation, Kearns and defendant discussed the

diner incident. Kearns advised defendant that the police had a

recording showing defendant in the diner parking lot holding a

handgun. Defendant challenged the existence of the recording and

exchanged banter with Kearns about whether there actually was a

recording. Finally, defendant stated, "I do not want to talk about

this anymore, all we going to do is go back and forth about the

situation." The interrogation then continued for approximately an

hour.

 The judge denied the suppression motion, finding that based

on his review of the recording, defendant was fully informed of

his Miranda rights, and knowingly, voluntarily and intelligently

waived his rights. The court rejected defendant's claim that he

invoked his right to remain silent during the interrogation. The

judge found that based on the totality of the circumstances and

considering the context of defendant's statement, "I do not want

to talk about this anymore," defendant did not invoke his right

to remain silent, but instead clearly expressed only a desire to

end the debate about the existence of the recording.

 Defendant subsequently pleaded guilty to second-degree

leaving the scene of a fatal accident, N.J.S.A. 2C:11-5.1, and

 5 A-3166-14T1
second-degree certain persons not to possess weapons, N.J.S.A.

2C:39-7(b). The court imposed concurrent five-year sentences. The

sentence on the certain persons offense is subject to the

requirements of the Graves Act, N.J.S.A. 2C:43-6(c), (d). This

appeal followed.

 POINT I

 DEFENDANT'S STATEMENT SHOULD BE SUPPRESSED
 BECAUSE IT WAS TAKEN IN VIOLATION OF
 [MIRANDA;] U.S. CONST. AMENDS. V, XIV; N.J.
 CONST. ART. I, PARA. 1.

 A. Defendant's Miranda Waiver Was Not
 Knowing and Intelligent Where He Was Not
 Permitted To Finish Reading A list of His
 Rights To Himself And Where He Was
 Misleadlingly Told That Waiver Was Just
 A Formality Before Questioning Could
 Begin.

 B. Defendant's Fifth Amendment Rights
 Were Violated by the Failure of the
 Authorities to Terminate Questioning
 When Defendant Expressly Stated "I Don't'
 Want to Talk About That No More." U.S.
 Const., amends V, XIV.

 II.

 We "engage in a 'searching and critical' review of the record"

when reviewing the trial court's denial of a Miranda motion. State

v. Maltese, 222 N.J. 525, 543 (2015) (quoting State v. Hreha, 217

N.J. 368, 381-82 (2014)), cert. denied, ___ U.S. ___, 136 S. Ct.

1187, 194 L. Ed. 2d 241 (2016). We defer to the trial court's

findings supported by sufficient credible evidence in the record,

 6 A-3166-14T1
particularly when they are grounded in the judge's feel of the

case and ability to assess the witnesses' demeanor and credibility.

State v. Robinson, 200 N.J. 1, 15 (2009); State v. Elders, 192

N.J. 224, 243-44 (2007). Our deference is required even where the

motion court's "factfindings [are] based on video or documentary

evidence," such as recordings of custodial interrogations by the

police. State v. S.S., __ N.J. __, __ (2017) (slip op. at 18, 24-

25).

 We will not reverse a motion court's findings of fact based

on its review of a recording of a custodial interrogation unless

the findings are clearly erroneous or mistaken. Id. at 16-17. We

review issues of law de novo. Id. at 25; State v. Shaw, 213 N.J.

398, 411 (2012).

 "The right against self-incrimination is guaranteed by the

Fifth Amendment to the United States Constitution and this state's

common law, now embodied in statute, N.J.S.A. 2A:84A-19, and

evidence rule, N.J.R.E. 503." State v. Nyhammer, 197 N.J. 383,

399, cert. denied, 558 U.S. 831, 130 S. Ct. 65, 175 L. Ed. 2d 48

(2009). "Confessions obtained by the police during a custodial

interrogation are barred from evidence unless the defendant has

been advised of his or her" Miranda rights. State v. Knight, 183

N.J. 449, 461 (2005).

 7 A-3166-14T1
 At a hearing challenging the admission of statements made

during a custodial interrogation, the "state must prove beyond a

reasonable doubt that a defendant's confession was voluntary and

was not made because defendant's will was overborne." Id. at 462.

The State must also prove "the defendant was advised of his rights

and knowingly, voluntarily and intelligently waived them." State

v. W.B., 205 N.J. 588, 602 n.3 (2011).

 Defendant first argues the court erred by denying the

suppression motion because the police failed to fully inform him

of his Miranda rights. We find no support in the record for the

contention. Aviles read each of the defendant's Miranda rights,2

Kearns asked if defendant understood everything Aviles said, and

defendant responded in the affirmative. The record supports the

court's finding that defendant was advised of his Miranda rights

and understood them.

 Defendant also argues Kearns misled defendant when, following

defendant's reading of the waiver paragraph, Kearns said

"basically what the paragraph states" is that no one "beat up,"

2
 A suspect must be advised of "the right to remain silent, that
anything he says can be used against him in a court of law, that
he has the right to the presence of an attorney, and that if he
cannot afford an attorney one will be appointed for him prior to
any questioning if he so desires." Miranda, supra, 384 U.S. at
479, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726. A defendant must be
afforded the "[o]pportunity to exercise these rights . . .
throughout the interrogation." Ibid.

 8 A-3166-14T1
threatened, or made any promises to defendant. Defendant argues

the statement was inaccurate and the court therefore erred by

finding defendant knowingly waived his Miranda rights. We

disagree.

 Kearns's statement did not misinform defendant about his

Miranda rights or contradict Aviles's statement of defendant's

rights. Cf. State v Pillar, 359 N.J. Super. 249, 268 (App. Div.)

("A police officer cannot directly contradict, out of one side of

his mouth, the Miranda warnings just given out of the other."),

certif. denied, 177 N.J. 572 (2003). To the contrary, Kearns's

statement pertained solely to the waiver paragraph on the Miranda

rights form. Kearns said only that he was explaining what "that

paragraph" said.

 Also, Kearns's statements were consistent with the waiver

paragraph. In part, the paragraph states that defendant had not

been threatened or coerced, no pressure had been used against him,

and no promises were made to him. That is precisely what Kearns

told defendant.

 The paragraph includes additional information concerning

defendant's waiver of his rights that Kearns did not mention, and

thus it may be argued his statement was incomplete or otherwise

inaccurate because he also said that he was describing what the

paragraph "basically" provided. We reject the argument because the

 9 A-3166-14T1
record shows that independent of Kearns's statements, defendant

actually read the waiver paragraph before he signed it. Thus,

there was sufficient credible evidence that defendant was fully

informed of the complete content of the waiver paragraph and

indicated his agreement to waive his rights by signing the waiver

rights form after he read it.

 Moreover, any inadequacies in Kearns's statement concerning

the waiver paragraph do not require a reversal of the court's

denial of defendant's suppression motion because a written waiver

of defendant's Miranda rights was not required, and the record

otherwise shows that even without defendant's execution of the

waiver form, he knowingly waived his Miranda rights.

 A written waiver was not required for defendant to knowingly

waive his Miranda rights. State v. Faucette, 439 N.J. Super. 241,

262 (App. Div.), certif. denied, 221 N.J. 492 (2015). "Failure to

sign a form of waiver does not preclude a finding of waiver, nor

does it make further questioning a violation of [a] defendant's

constitutional rights." State v. Warmbrun, 277 N.J. Super. 51,

63 (App. Div. 1994) (quoting United States v. Filiberto, 712 F.

Supp. 482, 487 (E.D.Pa. 1989)), certif. denied, 140 N.J. 277

(1995). "The voluntariness of [a] defendant's waiver is tested

by the totality of all the surrounding circumstances," only one

of which is defendant's execution of a written waiver. Id. at 62-

 10 A-3166-14T1
63; see also North Carolina v. Butler, 441 U.S. 369, 373, 99 S.

Ct. 1755, 1757, 60 L. Ed. 2d 286, 292 (1979) ("An express written

or oral statement of waiver of the right to remain silent or of

the right to counsel is usually strong proof of the validity of

that waiver, but is not inevitably either necessary or sufficient

to establish waiver.")

 A waiver of Miranda rights "need not take a designated legal

form nor need it be expressed in designated legal terminology."

State v. Yough, 49 N.J. 587, 596 (1967). "Any clear manifestation

of a desire to waive is sufficient." State v. Kremens, 52 N.J.

303, 311 (1968). Here, the court reviewed the recording showing

the detectives' interactions with defendant, and considered the

totality of the circumstances surrounding defendant's waiver of

his Miranda rights. In addition to defendant's execution of the

waiver form, there was other sufficient credible evidence

supporting the court's finding defendant knowingly waived his

Miranda rights. As noted, Aviles read the Miranda rights to

defendant and defendant understood them. Moreover, defendant read

the waiver paragraph aloud. The detectives then asked defendant

if he was willing to talk to them, defendant said they could ask

him questions, and he thereafter responded to the questions. Based

on the totality of the circumstances presented, we are therefore

convinced there was ample support for court's determination that

 11 A-3166-14T1
defendant knowingly waived his Miranda rights. S.S., supra, slip

op. at 27.

 We are also not persuaded by defendant's argument that the

court erred by rejecting his claim that he invoked his right to

remain silent when he said "I do not want to talk about this

anymore." The police are required to stop a custodial interrogation

when a suspect unambiguously invokes the right to remain silent

and to "diligently honor[]" a request, however ambiguous, to

terminate questioning. S.S., supra, slip op. at 29 (quoting State

v. Bey, 112 N.J. 123, 142 (1998)). "In those circumstances in

which the suspect's statement is susceptible to two different

meanings, the interrogating officer must cease questioning and

'inquire of the suspect as to the correct interpretation.'" Ibid.

(quoting State v. Johnson, 120 N.J. 263, 283 (1990)).

 However, it is "[n]ot merely the words spoken, . . . but the

full context in which they were spoken [that] have to be considered

in determining whether there has been an invocation of the right

to remain silent." State v. Roman, 382 N.J. Super. 44, 64 (App.

Div. 2005), certif. granted, 188 N.J. 219 (2006), certif. dismissed

as improvidently granted, 189 N.J. 420 (2007). In determining

whether the right to remain silent has been invoked, the totality

of the circumstances are considered, including "the words used and

the suspect's actions or behaviors," to discern whether "the

 12 A-3166-14T1
investigating officer should have reasonably believed that the

right was being asserted." State v. Diaz-Bridges, 208 N.J. 544,

565 (2012). Officers need not cease their interrogation if the

defendant's "words or conduct could not reasonably be viewed as

invoking the right to remain silent," but if the officers "are

reasonably uncertain whether the person is asserting the right to

remain silent, they may only ask questions directed to resolving

that uncertainty." State v. Burno-Taylor, 400 N.J. Super. 581, 590

(App. Div. 2008).

 The court thoroughly reviewed the totality of the evidence

presented here. Nyhammer, supra, 197 N.J. at 402. It carefully

considered the context in which defendant stated that he did "not

want to talk about this anymore" and determined defendant expressed

only a desire to end his short debate with Kearns over whether a

videotape existed, and not that he wished to invoke his right to

remain silent or end the interrogation. Indeed, defendant's

statement is part of a longer assertion, "I don't think you can

even show me a video of me with a gun, but I'm saying we gonna, I

do not want to talk about this anymore, all we going to do is go

back and forth about the situation." Further, as found by the

court, after making the statement defendant continued his

discussion with the officers without hesitation or any indication

he wanted to remain silent.

 13 A-3166-14T1
 Based on our review of the record, we find nothing clearly

mistaken or erroneous in the court's findings of fact. S.S., supra,

slip op. at 27. We therefore defer to the court's findings and

discern no basis to reverse the court's conclusion that defendant's

statement was not an invocation, ambiguous or otherwise, of his

right to remain silent.

 Affirmed.

 14 A-3166-14T1