# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4167-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FRANK A. FIORELLI,

    Defendant-Appellant.

_____

Submitted March 2, 2020 – Decided June 19, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-10-0144.

Michael Chazen, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Frank Fiorelli appeals from an April 27, 2018 judgment of conviction that was entered after he first pled guilty to fourth-degree

endangering the welfare of a child (possession of child pornography), N.J.S.A. 2C:24-4(b)(5)(b), and then, after a bench trial, was found guilty of third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a).  Prior to pleading guilty to the one charge, the trial judge denied defendant's suppression motion in which he argued that the search warrant issued prior to his arrest was stale.  After pleading guilty, and before his bench trial, the judge also denied defendant's motion to suppress his custodial statement to police.  In that motion, defendant argued that there was no evidence he waived his Miranda[1] rights.

On appeal, defendant raises the same arguments and also contends there was insufficient evidence to support his conviction for resisting arrest. Specifically, he argues the following:

> POINT I
>
> THE TRIAL COURT ERRED IN NOT SUP[P]RESSING THE SEARCH WARRANT WHICH WAS STALE GIVEN THE TIME THAT HAD EXPIRED.
>
> POINT II
>
> THE TRIAL COURT ERRED IN NOT SUP[P]RESSING DEFENDANT'S STATEMENT GIVEN THAT HE NEVER WAIVED HIS MIRANDA RIGHTS.

---

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

<u>POINT III</u>

THE TRIAL COURT'S VERDICT AFTER A BENCH
TRIAL THAT DEFENDANT RESISTED ARREST
WAS AGAINST THE WEIGHT OF THE EVIDENCE
(NOT RAISED BELOW).

We are not persuaded by any of defendant's contentions and affirm, substantially for the reasons expressed by Judge John M. Deitch in the written decisions he issued denying defendant's motions, and setting forth his findings of facts and conclusions of law after defendant's trial.

I.

In September 2012, Special Agent Joseph Gronczewski of the Federal Bureau of Investigation (FBI), and Police Detective Christopher Camm, of his department's Digital Technology Investigations Unit (DTIU),[2] conducted an ongoing investigation into twenty-three individuals believed to be involved in observing, downloading, and sharing child pornography through the Internet. Defendant, a former police officer, a former corrections officer, and a retired captain of the local fire department, was one of the suspects. As part of the investigation, on September 14, 2012, Gronczewski determined that both child

---

[2] Detective Camm is also a member of the New Jersey branch of the Internet Crimes Against Children Task Force, which operates nationwide.

A-4167-17T3

pornography and encrypted records, called "artifacts," associated with a file-sharing program known as ARES, were on defendant's computer from which Camm was able to download five files containing child pornography.

Five months later, relying on detailed information about the entire investigation and information specific to his September 2012 investigation into defendant, Camm secured a search warrant on February 14, 2013, which was executed on February 19, 2013 at defendant's home. There, once the police confirmed that defendant's computer contained child pornography, they arrested him, seized his computer, and advised defendant of his Miranda rights. During his arrest, an altercation occurred that required the intervention of several officers before they were able to place defendant in handcuffs.

After his arrest, the police brought defendant to headquarters for further questioning. Prior to his interrogation there, which was videotaped, the police again advised defendant of his Miranda rights. After being advised, defendant did not expressly state that he was waiving his rights, but he proceeded to respond to questioning by the officers.

In his statement to police, defendant admitted to installing the ARES program on his computer and searching for adult pornography, but stated that if child pornography "popped up," he would click off of it. He also did not recall

seeing any reference to file sharing when he installed ARES. A full forensic examination of his computer revealed 634 files linked to child pornography, including twenty images and seventy-three videos.

A State Grand Jury returned an indictment charging defendant with second-degree endangering the welfare of a child (distribution of child pornography), N.J.S.A. 2C:24-4(b)(5)(a) (Count One); second-degree endangering the welfare of a child (offering child pornography), N.J.S.A. 2C:24-4(b)(5)(a) (Count Two); fourth-degree endangering the welfare of a child (possession of child pornography), N.J.S.A. 2C:24-4(b)(5)(b) (Count Three); and third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a) (Count Four).

Subsequent to his indictment, defendant filed a motion to suppress the evidence seized from his residence. After considering the parties' written submissions and oral arguments, the judge denied the motion for the reasons stated in his October 27, 2016 written decision.

On July 20, 2017, defendant pled guilty to the third count of the indictment, charging fourth-degree endangering the welfare of a child, without a sentencing recommendation from the prosecutor. Defendant also waived his right to a jury trial and elected to proceed with a bench trial on the remaining charges.

A-4167-17T3

Prior to trial, defendant filed a motion to suppress his statement to the police. On November 14, 2017, Judge Deitch held a non-evidentiary hearing before issuing a written decision denying defendant's motion.

Thereafter, the judge presided over defendant's trial and on March 9, 2018 issued his written decision acquitting defendant of the indictment's first two counts that charged second-degree endangering, but convicting defendant of the fourth count, third-degree resisting arrest. The judge sentenced defendant on counts three and four to two concurrent three-year periods of probation, which included requirements for sex offender specific counseling. This appeal followed.

II.

We begin our review by addressing defendant's argument that Judge Deitch should have granted his motion to suppress because the search warrant was stale, since it was based upon information gathered in September 2012, rather than when the search warrant was obtained, in February 2013. We find no merit to this contention.

Although we normally grant deference to the findings of fact made by a trial judge in connection with a motion to suppress, State v. Elders, 192 N.J. 224, 243-44 (2007), there was no evidentiary hearing in this case. Instead, both

counsel and the judge relied on the contents of Detective Camm's affidavit. Under these circumstances, we undertake a de novo review of the adequacy of probable cause supporting the search warrant, State v. Handy, 206 N.J. 39, 44-45 (2011), recognizing defendant bore the burden of challenging the search and proving a lack of probable cause, State v. Boone, 232 N.J. 417, 427 (2017). Our review of this purely legal issues is plenary. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); State v. Goodman, 415 N.J. Super. 210, 225 (App. Div. 2010).

To have prevailed on his motion, defendant had the burden of overcoming the presumption of validity extended to a search conducted with a warrant; to do that, he was required to "prove 'that there was no probable cause supporting the issuance of the warrant.'" State v. Jones, 179 N.J. 377, 388 (2004) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). In considering whether defendant met his burden, we, like the trial judge, have to give "substantial deference" to the discretionary determination made by the issuing judge. Ibid. (quoting State v. Sullivan, 169 N.J. 204, 211 (2001)). Even if the judge found the supporting information "marginal," he would have to resolve the doubt by sustaining the search. State v. Kasabucki, 52 N.J. 110, 116 (1968) (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)).

Thus, the question was whether the judge issuing the warrant was presented "with facts sufficient to permit the inference of the existence of probable cause" necessary to issue a warrant. State v. Novembrino, 105 N.J. 95, 128 (1987). The issuing judge was required "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there [was] a fair probability that contraband or evidence of a crime [would] be found in" the place or places to be searched. State v. Smith, 155 N.J. 83, 93 (1998) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). The judge had to "consider the totality of the circumstances, and . . . deal with probabilities." Schneider v. Simonini, 163 N.J. 336, 361 (2000) (citing Gates, 462 U.S. at 230-31, 238).

Defendant's claim of "staleness" bears on whether the totality of the information in the affidavit permitted the judge to find "a fair probability that contraband or evidence of a crime [would] be found" if defendant's premises were searched during the time permitted in the warrant. Smith, 155 N.J. at 93 (quoting Gates, 462 U.S. at 238). In short, staleness is a question of whether the probable cause still exists when the warrant is issued and at the time of the search. See State v. Blaurock, 143 N.J. Super. 476, 479 (App. Div. 1976); see also Sgro v. United States, 287 U.S. 206, 210-12 (1932).

"The question of the staleness of probable cause depends more on the nature of the unlawful activity alleged in the affidavit than the dates and times specified therein."  Blaurock, 143 N.J. Super. at 479 (quoting United States v. Harris, 482 F.2d 1115, 1119 (3d Cir. 1973)); see also United States v. Nilsen, 482 F. Supp. 1335, 1339 (D.N.J. 1980) ("The timeliness of probable cause cannot be assessed in a factual vacuum.  Rather, timeliness and its converse, staleness, must be measured by the [n]ature and regularity of the allegedly unlawful activity.").

Thus,

> [w]here the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.
>
> [Blaurock, 143 N.J. Super. at 479 (quoting United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972)).]

In cases dealing with the maintenance and sharing of child pornography, a time lapse is less significant.  As our Supreme Court has explained, "pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time."  State v. Evers, 175 N.J.

9

355, 384 (2003) (quoting United States v. Lamb, 945 F. Supp. 441, 460 (N.D.N.Y. 1996)).

Applying these guiding principles, we conclude that Judge Deitch properly considered the affidavit supporting the search warrant here and correctly concluded that the passage of five months from the officers' detection of child pornography on defendant's computer to the date of the warrant being issued did not diminish the probable cause found by the warrant judge that defendant had committed a crime.

As Judge Deitch found, the five-month period between the September 14, 2012 investigation and the application for the warrant was justified and did not "affect the vitality of probable cause under these circumstances." He stated that, "while the initial investigation of . . . [d]efendant was one day, the scope of the investigation and the number of targets suggest that [s]tate [d]etectives had to monitor activity on a continuous basis." Quoting Evers, the judge opined that "[t]he observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases." Id. at 383 (quoting Lamb, 945 F. Supp. at 460).

The judge's findings were supported by Detective Camm's affidavit filed in support of the warrant. As Detective Camm explained in the affidavit, during their ongoing investigation the police searched the ARES network for file names containing keywords commonly associated with child pornography, downloaded the files, and confirmed that the images contained child pornography. Next, the police determined the location of the computer. He also stated, "child pornographers typically retain their materials (pictures, films, correspondence, photographs, and computer graphic image files) for many years," and they "rarely dispose of sexually explicit images of minors because the images are treated as prized possessions."

Based on our de novo review of the totality of the circumstances, and "the nature of the unlawful activity," we agree that the five-month time period aligned with a "common sense" view that defendant would still have the incriminating evidence saved on his computer when the search warrant was executed. Blaurock, 143 N.J. Super. at 479.

III.

We turn our attention to defendant's argument that Judge Deitch improperly denied his motion to suppress the statement that he gave at police headquarters after his arrest. The judge denied the motion after conducting a

hearing, with the consent of the parties, based on the video tape and their written submissions, before concluding that defendant knowingly and voluntarily waived his Miranda rights.

The parties' submissions established it was undisputed that the police advised defendant of his Miranda rights on two occasions, but never expressly asked defendant whether he wanted to waive his rights. The parties' dispute therefore focused on whether, despite that omission, defendant waived his rights.

According to the transcript and the videotape of the interrogation, two police sergeants interviewed defendant. Prior to asking defendant questions, one of the officers confirmed with him that at the time of his arrest, his Miranda rights were read to him, and then the officer again read defendant his rights. Defendant confirmed that he understood what was read to him. Defendant also signed the back of the Miranda card used by the officer to confirm what was read to him.

After asking defendant some preliminary background questions, including about his ownership of the subject computer, the officer interrupted his questioning and stated the following: "[T]he questions I'm about to ask you if you want to talk to me you can, if you don't that's fine. But I just want to let

you know.  Would you like to continue talking to me about this?  Okay.  That's a yes?"  Defendant replied "yes" and the questioning continued.  At its conclusion, defendant confirmed that he provided his "statement free and voluntary with no threats, promises, or anything being made."

On November 14, 2017, Judge Deitch issued his order and decision denying defendant's motion.  In his written decision, the judge found that the officers' questioning of defendant was a custodial interrogation subject to Miranda.  Citing Miranda, 384 U.S. at 444, and State v. Bey (II), 112 N.J. 123, 134 (1988), the judge observed that "[a]n accused may waive his Miranda rights if the waiver is made voluntarily, knowingly, and intelligently."  Relying on State v. Miller, 76 N.J. 392, 402 (1978), Judge Deitch stated that in determining whether an individual waived their rights, a court had to consider "the totality of the circumstances."  Quoting from Miller, the judge identified the factors to be considered, including a "suspect's age, education and intelligence, advice as to constitutional rights . . . [and a] suspect's previous encounters with the law."

Relying on State v. Nyhammer, 197 N.J. 383 (2009), which addressed facts similar to those in this case, Judge Deitch rejected defendant's contention that "an express waiver must be obtained" by police before questioning a defendant.  The judge then applied the "Miller factors" to defendant, and stated

that "it [was] clear" defendant waived his rights based upon the following findings:

> Defendant is a mature individual over [eighteen] years of age. He appears well educated and intelligent. By way of background, he is a former police and corrections officer. He was the Fire Captain for the [local] Fire Department.

> The circumstances of the interrogation do not provide any indicia of duress, coercion or misunderstanding on the part of [d]efendant. The entire statement was less than one hour in length.

> After [d]efendant was informed of his rights, his understanding of his rights was confirmed and he willingly answered the questions posed to him. While there is no requirement of an express, oral waiver, one was given by [d]efendant at the initiation of questioning [when he responded "yes" to the officer asking him if he wanted to continue talking to the officer].

> . . . .

> The totality of [these] circumstances, as considered under the test of Miller, establish, beyond a reasonable doubt, that [d]efendant was aware of his constitutional rights and knowingly and voluntarily waived those rights.

"Generally, on appellate review, a trial [judge]'s factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017));

14

see also State v. Gamble, 218 N.J. 412, 424 (2014). Accordingly, "[a] trial [judge]'s findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). This standard also applies to "factual findings based on a video recording or documentary evidence" to ensure that trial judges remain the fact-finder. S.S., 229 N.J. at 381. However, we owe no deference to "conclusions of law made by lower courts in suppression decisions," which are reviewed de novo. Boone, 232 N.J. at 426.

We conclude that Judge Deitch correctly analyzed defendant's contentions under the appropriate standards. We therefore affirm the denial of defendant's motion to suppress his statement substantially for the reasons stated in the judge's comprehensive written decision. We add only the following comments.

A "waiver need not take a designated legal form or be expressed in designated legal terminology." State v. Yough, 49 N.J. 587, 596 (1967). "[W]hen 'determining the validity of a Miranda waiver,' trial courts must decide 'whether the suspect understood that he did not have to speak, the consequences of speaking, and that he had the right to counsel before doing so if he wished.'" A.M., 237 N.J. at 397 (quoting Nyhammer, 197 N.J. at 402). A written waiver,

15

or any "explicit statement," is not required for defendant to knowingly waive his Miranda rights. Ibid. (quoting State v. Hartley, 103 N.J. 252, 313 (1986) (Stein, J., dissenting)); see also State v. Faucette, 439 N.J. Super. 241, 262 (App. Div. 2015). "[F]ailure to sign a form of waiver does not preclude a finding of waiver, nor does it make further questioning a violation of [a] defendant's constitutional rights." State v. Warmbrun, 277 N.J. Super. 51, 63 (App. Div. 1994) (first alteration in original) (quoting United States v. Filiberto, 712 F. Supp. 482, 487 (E.D. Pa. 1989)). "Any clear manifestation of a desire to waive is sufficient." State v. Kremens, 52 N.J. 303, 311 (1968). "[A] knowing, intelligent, and voluntary waiver is determined by the totality of the circumstances surrounding the custodial interrogation based on the fact-based assessments of the trial court." A.M., 237 N.J. at 398.

Here, "the record before [us] is 'devoid' of any implication that defendant 'was confused or did not fully appreciate his rights,' nor was he 'coerced, intimidated, or tricked' by police into giving a statement." Id. at 399 (quoting State v. Mejia, 141 N.J. 475, 503 (1995)). Judge Deitch properly considered the totality of the circumstances and came to the correct conclusion. We have no reason to disturb his decision.

IV.

Last, we consider defendant's challenge to his conviction for having committed the third-degree offense of resisting arrest. Although defendant couches his argument in terms of the weight of the evidence being against the verdict, an argument that applies to jury trials, we review it under the correct standard of whether there was sufficient credible evidence in the record to support the judge's decision after a bench trial. See State ex rel. R.V., 280 N.J. Super. 118, 120-21 (App. Div. 1995).

The offense that the indictment charged defendant with committing is defined by N.J.S.A. 2C:29-2(a)(3)(a), which states in pertinent part, the following:

> (1) Except as provided in paragraph (3), a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. . . . (3) An offense under paragraph (1) . . . of subsection a. is a crime of the third degree if the person:
>
> (a) Uses or threatens to use physical force or violence against the law enforcement officer or another. . . .

Under subsection (3)(a), "[t]he use or threatened use of physical force or violence . . . does not include any requirement that a defendant 'create a substantial risk of causing physical injury.'" State v. Brannon, 178 N.J. 500,

17

506-07 (2004). The definition of physical force merely requires "dynamic power showing great strength, power, intensity, fury, [and] destructiveness." Id. at 510 (alteration in original) (quoting Webster's Third New Int'l Dictionary 887 (1981)). "[E]ven minimal force or violence can be 'physical,'" id. at 507, as contemplated by the statute in order to prevent "the transformation of arrests into melees and tragedy," id. at 509. "For compelling public safety reasons . . . resisting arrest . . . statutes and interpretive case law require that a defendant submit to [even] an illegal detention and that he take his challenge to court." State v. Crawley, 187 N.J. 440, 455 (2006).

At trial, Trooper Joshua Graeber, a member of the unit who executed the search warrant, and Sergeant Christopher Fowler, one of the arresting officers, testified for the State about the circumstances of defendant's arrest. Defendant's wife testified to a different version of those events on behalf of defendant.

The officers testified that upon arrival at defendant's home, they knocked and announced, but there was no answer. After they then entered the house, Graeber saw defendant coming down the stairs carrying a gun and allegedly calling out, "get the fuck out of my house." Graeber identified himself and instructed defendant to drop his gun. Defendant repeated, "get out of my house," but then complied and put down his gun. According to Fowler, when they tried

18

to handcuff defendant, he became "agitated," flailed his arms, and fell into a "protective shield." Fowler repeatedly told defendant that he was under arrest, but defendant would not comply and became combative. At that point, Fowler and another trooper took defendant to the ground. Defendant allegedly pulled his arms under his body and rotated his hip in an attempt to stand up. After a brief struggle, he surrendered and was placed in handcuffs.

According to Fowler, defendant's wife was in a second-floor bedroom, and by the time she was brought downstairs, the struggle with defendant had already abated. Graeber claimed that he never saw defendant's wife in the upstairs hallway.

According to defendant's wife, she was downstairs when she heard a loud, slow banging on the door. She "froze" and yelled "who's there?" She then ran upstairs and woke defendant, telling him that she believed someone was breaking into the house. Defendant allegedly told her to get his gun and to call 9-1-1. She saw defendant leave the bedroom, so she "threw the phone down" and followed him into the hallway. She stated that defendant only said "get out of my house," and that when he was told to put his gun down, he "did so immediately in a very controlled and deliberate fashion." She said that defendant was fully compliant and did not waive his arms around. She claimed

that once she reached the bottom of the stairs, she observed a "pile" of bodies and that the police were on top of defendant.

In his credibility findings, the judge found both of the arresting officers to be credible and accepted their testimony over that of defendant's wife. He concluded that defendant's conduct frustrated the troopers' attempts to place him under arrest by using "physical force . . . in order to prevent the officers from effecting his arrest." He described the force as "waving his arms; moving his arms so as to frustrate the administration of handcuffs and rolling his body about so as to frustrate the administration of handcuffs." The judge concluded that "[t]he State has proved guilt beyond a reasonable doubt with regard to" the resisting charge.

Defendant states that, "it is difficult, if not impossible, to see how waiving of arms or rolling of the body is either force or physical violence '<u>against</u>' anyone, let alone a law enforcement officer." He further argues that, "[t]here was absolutely no testimony regarding punching or kicking by . . . defendant, or any other physical violence or force '<u>against</u>' the [t]rooper." Without such evidence, defendant's conviction should be reversed. We disagree.

We conclude that contrary to defendant's contentions on appeal, Judge Deitch's findings were supported by the credible testimony of the two officers.

The testimony established defendant's use of force, as contemplated by the statute, and was directed toward the police officers in his attempt to prevent his arrest. Here, again, we have no cause to disturb the judge's verdict.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4167-17T3